RICHARD B. HOWELL, APPELLEE, v. GEORGE L. SHELDON, GOVERNOR, ET AL., APPELLANTS.

FILED JUNE 26, 1908. No. 15,619.

Soldiers' Homes: GOVERNMENT. Under the statute providing that the "Soldiers and Sailors Home shall be under the charge of the board of public lands and buildings"; that such board "shall adopt such regulations as they may deem expedient for the proper management of said home, and the said board may change such regulations from time to time as they may deem best"; that the management of the home shall be vested in said board, and that "they shall prescribe rules of admission to said home in accordance with the provisions and objects of this act," the enactment of a rule which requires all present or future members of the home who receive pensions in excess of $12 a month to pay a percentage of the pension money for the benefit of the home is within the discretionary power of the board in the management of the institution, and is not such an abuse of official discretion as would warrant a court in interfering with the legally constituted authorities in charge of the home.

APPEAL from the district court for Hall county: JAMES R. HANNA and JAMES N. PAUL, JUDGES. Reversed.

William T. Thompson, Attorney General, and William B. Rose, for appellants.

W. H. Thompson and O. A. Abbott, Sr., contra.

LETTON, J.

The plaintiff is an inmate of the Nebraska Soldiers and Sailors Home, situated at Grand Island, and brings this action for himself and all others similarly situated. He alleges: That he was duly admitted to the home, and has complied with all the rules and regulations of the board of public lands and buildings of the state and the orders of the commandant, except certain ones which are complained of; that he is entitled to a pension at the rate of $20 a month from the United States government; that the board of public lands and buildings has adopted the following rule: "All who are members of the home at the time of adoption of these rules or who may hereafter become such, who are receiving or who may hereafter receive a pension in excess of $12 a month and not more than $19 a month, shall pay into the cash fund of the home 10 per cent. of the amount. Those receiving or who may hereafter receive $20 and not more than $23 shall pay into the cash fund of the home 20 per cent. Those who are receiving or who may hereafter receive $24 and not more than $29 a month, 30 per cent. In case where any member is receiving $30 or more he shall pay such amount as the commandant and the board may deem just. Provided, further, that where a man on application is helpless or afterwards becomes helpless so that he requires consideration and special attention, he shall be required to pay any portion that the commandant and the board may deem equitable, except in case of dependent wife and children." He complains that the rule and order is unconstitutional and void, and seeks to deprive him of his property without due process of law, and takes property without compensation for public use; that under said rule the commandant has taken from him 20 per cent. of the said $60, and has threatened to oust him from the institution unless he pays the same; that the cash fund mentioned in the order belongs to the state of Nebraska, and that if the money is paid by him it will immediately be placed in said fund

and converted to the use of the state; that the payment of
the amount required was not a condition of his right to
enter the institution, and could not legally have been made
such condition.   He prays for an injunction to restrain
the enforcement of said rule, and that the board be re-
strained from promulgating any rule or order interfering
with the pensions of the inmates or compelling the pay-
ment of any money into the treasury of the state or the
home by the inmates, and that the rule may be declared
unconstitutional, null and void.   A demurrer was filed
to this petition, which was overruled.   The defendants
electing to stand upon the demurrer, the district court
found that the facts contained in the petition were true,
and rendered a judgment perpetually enjoining the de-
fendants from enforcing rule 17 or any other like rule.

The act establishing a Soldiers and Sailors Home in
Grand Island was passed in 1887.   Since its enactment
the act has been amended no less than six times.   The
amendments, however, with one exception, are not ma-
terial in determining the question under consideration.
This amendment, made in 1891, provides that "nothing in
this act shall be construed to deny any old soldier or
sailor, who is properly a subject to be admitted to the
home, the privilege of paying his board or any part thereof
if he so desires."   Laws 1891, ch. 49, sec. 7.   The law as it
now stands with reference to the management and control
of the soldiers home and the admittance and support of
inmates is as follows:  "Section 4.   That such Soldiers
and Sailors Home shall be under the charge of the board
of public lands and buildings, and the governor shall ap-
point for said home such officers as may be required in
said home.   It is further provided that the board of public
lands and buildings shall adopt such regulations as they
may deem expedient for the proper management of said
home, and the said board may change such regulations
from time to time as they may deem best, and they shall
make such publications of these regulations as they deem
necessary for the information of those interested.

"Section 5. The management of the home shall be vested in the board of public lands and buildings, said board shall * * * make such rules and regulations as are prescribed by section 4 of this act. They shall prescribe rules of admission to said home in accordance with the provisions and objects of this act. * * * They shall assign tracts of land and cottages to such of the inmates as may be able to partially support themselves by manual labor.

"Section 6. That all laws, rules and regulations as enacted and passed by the board of public lands and buildings for the control and government of the officers, employees and inmates of the institution shall be approved by the governor." Comp. St. 1907, ch. 82a.

There is no provision in the statute governing or controlling in any manner the disposition of pension money received by or due to the inmates of the institution, and it is insisted by the plaintiffs that, since there is no express provision of the statute conferring the power upon the board of public lands to make a rule requiring the application of a portion of the pension money of the inmates to support the institution, the board is entirely without authority to establish rule 17 or any other rule of like nature or effect. It is apparent from the general power conferred by the statute upon the board that it has the authority to establish such rules and regulations with reference to the conduct of the affairs of the home as are reasonable when considered in connection with the object and purposes of the institution, and which are not inconsistent with the law establishing the same. The question presented then is whether the rule in question is such a gross abuse of the discretion reposed by the legislature in the board that it cannot be upheld as a reasonable exercise of the governing and administrative power. Similar questions have arisen in other states which have established like institutions. The decisions of the courts thereon will be considered later in this opinion, but it may be of some value in determining whether the rule is reasonable or

not to consider the manner of treating pensions belonging to the inmates of the national soldiers homes and of the soldiers homes maintained by other states by the authorities of such institutions and by the several legislatures. In determining a question of this nature, we believe we are entitled to take judicial notice of a fact of such public notoriety as the establishment of similar homes by the United States and by other states, and of the authorized public reports of the United States and state officers charged with the administration and inspection of the same. From this source it appears that 27 states maintain such homes, and that in four states, aside from Nebraska, the inmates are required to pay a portion of their pension to a fund for the benefit of the home, or for hospital or other beneficent purposes connected with the institution. In two of these states there are express statutory provisions permitting the board of management to make it a condition of admission to the home that a specified portion of the pension money, if there are no persons dependent upon the inmate, shall be paid toward defraying the expenses of the institution; but in other states where the practice is followed no specific statute with reference to pensions has been enacted. In Illinois the statute provides that, when deemed necessary by the superintendent, the pensions shall be deposited and sent to the dependent relatives, or kept in trust for the pensioner at his discharge. In eight other states, by the rules of the board of management, the inmates are required to deposit their pensions with the officers of the home, who are empowered to hold the same in trust for the benefit of the pensioners or his dependent relatives, and to pay the same in accordance with varying rules; no part of the pension being taken for the support of the home. Under the provisions of the federal statutes with reference to soldiers homes, the pensions to be paid to the inmates are required to be paid to the treasurer of the home for the benefit of the pensioner, under rules and regulations established by the managers of the home. From an examination of the sev-

eral statutes, in connection with these facts, it appears that in many of the states having such homes it has been considered that the board of management, under its general powers for the care, control and discipline of the institution, has the right to make rules which take away from the inmate of the home the unrestricted use of pension money, and require its deposit by him to be controlled for his benefit, or for that of his dependent relatives, or which require the payment by him of a portion of the same to help defray the expense of the institution. While in a few states there are special statutory provisions regarding the control of pensions, in the main the statutes in nearly all the states seem to be of the same general tenor, largely omitting the minor details of rules and management, and leaving these to be determined upon by the Board to whose care the institution is committed. It may be said, however, that the tendency of the governing body in some of the states seems to be to control the expenditure of the pension for the sole benefit of the pensioner or his family, and to supply the support of the inmates from the funds of the state without requiring any contribution from him either as a condition of entrance or as an exaction after being admitted, and, under the acts of congress making appropriations to aid in the support of state soldiers homes, the practice of requiring the inmates to pay a part of their pensions for the support of the home is recognized and discouraged by providing that the appropriation to each state is to be reduced to an extent equal to one-half of the amount of the pension so retained.

We will now examine the opinions of those courts which have considered this subject. The board of management of the Michigan Soldiers Home adopted rules requiring every pensioner inmate to turn over to the commandant any sum in excess of $5 a month received in pensions, to be held subject to the disposal of the board, and providing that no applicant who receives over $12 a month pension shall be admitted to the home unless he needs hospital treatment. By a resolution of the board the money de-

posited was to be sent to the dependents of the pensioner, or kept on deposit to be paid to him upon his final discharge from the home. The court said, in an action to compel the abrogation of this rule: "A large discretion was by this act lodged in the board. * * * A very clear case of the abuse of this discretion must exist to entitle the courts to interfere. We think it is within the power of the board to require the pension money of the inmates to be deposited, if, in the words of the statute, they deem it necessary to preserve order, enforce discipline, or preserve the health of the inmates." The court vacated that portion of the rule which conferred upon the board the right to determine what relatives are dependent upon the pensioner for support, but held the other provisions were reasonable exercise of the power to make rules. *Loser v. Board,* 92 Mich. 633. In Iowa the board of managers of the soldiers home adopted a rule with reference to pensioners, which, among other things, provided that "any person entering the home having a pension exceeding $6 a month shall surrender all of said pension in excess of $6 a month to the commandant, and, if the person so surrendering his pension has dependent relatives, the money so surrendered shall be paid to said relatives by the commandant, and, in case such persons shall have no dependent relatives, the excess of his pension over $6 a month shall be credited to the contingent fund." It was complained that the rules were unauthorized. The statute of Iowa provided that the board should determine the eligibility of applicants for admission to the home, and should have power to make rules and regulations for its management and government. The court said, in substance, that courts should not interfere with the action of the board unless it is plainly manifest that the board has abused the discretion with which it is vested; and further said: "The support offered by the state, and given at the home, is a gratuity, and not based upon any legal duty or contractual relations between the state, on the one hand, and the inmates of this home, on the other; hence, it fol-

lows that the power which confers the benefaction may, by itself or its agents, determine what the benefaction shall be, and the circumstances which must exist in order to entitle one to share the state's bounty. It has said that if you enter the home, and if you have an income, from pension or otherwise, which will in part support you, you shall agree to and shall contribute from it towards your support. This deprives the soldier of no rights. When he makes his application for admission to the home, he knows what the rules require. He then understands the conditions under which he may be a sharer in the bounty of the state. The support in the home being a gift upon the part of the state, it or its agents may make the enjoyment of the benefaction dependent upon any reasonable conditions. No one is compelled to accept the conditions and become an inmate of the home. One may decline and remain outside. If, however, he sees fit, after knowing of the conditions and agreeing to them, to become an inmate of the home, he is in duty bound to obey the rules; and, if he fails or refuses so to do, he is in no situation to complain if he be honorably discharged from the home." *Ball v. Evans,* 98 Ia. 708. It was said upon the argument of the instant case that at the next session of the Iowa legislature following this decision the power to take a portion of the pension to aid in defraying the expenses of the home was taken away from the board; but this, if it proves anything, merely goes to show that legislative action was necessary to change the previous law. A few years later, in the case of *Brooks v. Hastings,* 192 Pa. St. 378, the supreme court of that state held that, under a statute giving the board power to adopt rules and regulations for the management, government and admission of soldiers to the soldiers home of that state, the board is authorized to make it a condition of admission that the applicant shall pay a part of his pension to the home, and that the rule did not contravene the constitutional prohibitions against taking the property of citizens without due process of law, and without just compensation. The action

was to recover money already paid, and to enjoin the defendants from discharging the inmate from the home for refusing to make further payments. The court was of the opinion that the rule was not unreasonable in any degree, and said: "If there were no power able to contract with applicants who draw pensions as to the surrender of some portion of their pensions to the support of the homes, it would follow that such applicants could get all the support of the homes, and keep the whole of their pensions also, a result which does not seem fair either to the state or the taxpayers who provide the means for supporting the homes. The contention that the requirement in question is contrary to that provision of the state and federal constitutions which prohibits the taking of property of the citizen without due process of law, and without making just compensation, has no application. This is not the taking of property in any conceivable sense. It is the creation of a condition upon which charitable support may be obtained under a contract which is voluntarily made, providing for the contribution of something toward the maintenance of the institution which furnishes the support. The applicant is under no obligation to make such a contract, but, if he does make it and gets the benefit, he must take it as it is given, and keep his contract like all other good citizens are obliged to do."

It is insisted, however, that, because the Nebraska statute provides that nothing in the act shall prevent any soldier from paying his board or any part thereof if he so desires, this must be taken as indicating that the legislature intended that no money should be taken from an inmate for his support unless voluntarily given; but this we think does not follow. There may be old soldiers or sailors who are not "dependent upon public or private charities" who desire to be admitted to the home for the advantages of companionship and comfort thereby provided, and who from laudable motives are unwilling to accept as a free gift the bounty of the state, having suffi-

cient property or means to support themselves. Apparently it was to provide for such cases that this amendment was adopted. A strict construction of the requirements as to being dependent upon charity might exclude many an old soldier who would much rather support himself than be dependent upon the public, and who might scruple to accept the benefits of the home unless he could in some part defray its expenses.

It is also contended that the rule of uniformity in taxation is violated by the order. We think there is no question of taxation involved. The plaintiff does not allege that he is a taxpayer, and the detailed and specific allegations in the petition of his inability to support himself and of his dependency upon public or private charity of themselves are enough to · negative such an assumption, even if we were justified in making it.

It is argued that the payment of a portion of a pension to help support the home cannot be made a condition of the right to enter; that the requirements for admission are fixed by the statute, and cannot be changed by the board. It is true that the county board must ascertain and report their finding to the managing board as to certain facts as to residence, disability and dependency, but this finding alone does not confer the right of admission. The statute is that the board "shall prescribe rules of admission to said home in accordance with the provisions and object of this act." The rule complained of is made under the power thus granted, and the reasoning of the opinions quoted as to the right to impose conditions upon the right to enter is fully applicable.

The question is asked: Why draw the line at $12 a month? Is there such a difference between the conditions of the pensioner drawing $12 a month and the one drawing $13 that one may reasonably be required to contribute to his own support and the other be relieved from that burden? But this query might equally well be directed to all cases of classification by numbers, and yet they are

9

generally upheld. The distinction must necessarily be more or less arbitrary, but it increases in degree as we recede from the meeting point. A city of 9,999 inhabitants differs infinitesimally in conditions from one of 10,-000, yet a different rule may be applied in its government, and so in other matters the difference of a day in the age of a boy or a girl may make changes in their legal rights and duties of vast importance, and yet the line established is an arbitrary one. The general principle is plain that a pensioner receiving more than $12 a month is better able to contribute to his own support than one receiving that sum only, and in a greater ratio as his pension exceeds that sum, which seems to be taken as the amount of a reasonable expenditure for such luxuries and relaxations as each inmate may consider best adapted to promote his comfort and happiness.

Upon the whole matter, we hold the same views as to the relation between the inmates of the home and the state as expressed by the courts in the cited cases. While we are of the opinion that the enactment of the rule was not such an abuse of discretion as to make it beyond the power of the board to enact, whether or not it is expedient is a matter as to which we express no opinion. The body to whom the law has committed the management of the institution is presumably much better qualified to determine this than the court is, even though it had the right to do so, which it has not. If the legislature believes the rule to be harsh, unnecessary or inexpedient, it can limit the power of the board as to the right to require the payment of any part of the pensions of the inmates for the support of the institution, and thus conform the rule in this state to that in the majority of those states maintaining like institutions.

The judgment of the district court is reversed and the cause dismissed.

REVERSED.