JOHN BALDWIN, Appellee, v. H. J. JACOBS, Appellant.

TRIAL:    Verdict—Directed Verdict—Denied When One Jury Issue Survives.    General motions for directed verdict are necessarily overruled when at least one issue is for the jury.

LANDLORD AND TENANT:    Leases—Forfeiture Ipso Facto.    Forfeiture of a lease does not follow, *ipso facto*, from the mere doing by the tenant of specified prohibited acts, when the lease only gives the landlord an *option* to forfeit by reason of such acts.    In such case, forfeiture only follows a declaration of forfeiture by the landlord in accordance with the lease.

LANDLORD AND TENANT:    Leases—Abandonment.    The act of a tenant in removing from the leased premises prior to the expiration of the term does not *necessarily* show an abandonment of the lease.

LANDLORD AND TENANT:    Leases—Prohibiting Assignment or Subleasing.    The act of a tenant, as part of a contract of sale of his crops, in allowing the purchaser to come upon the premises and to bring stock thereon for the purpose of their consuming said crops, does not necessarily constitute an *assignment* or *subleasing* of the premises, even though the tenant does not retain physical possession of the premises during the period of such consumption.

LANDLORD AND TENANT:    Use of Premises—Eviction.    Any act of a landlord which deprives the tenant of that beneficial enjoyment of leased premises to which he is entitled under the lease, will amount to an eviction.    So held where an injunction against a third party worked an eviction of a tenant.

INJUNCTION:    Liability on Bonds—Belated Plea to Defeat.    Plaintiff in injunction may contest the dissolution of the injunction

on the sole issue whether it was *legally issued* in the first instance, and, when unsuccessful on that issue, defeat recovery on the bond for attorney fees expended in securing the dissolution, on the plea that the dissolution on motion was really perfunctory; that, when the contest over dissolution was had, the bond had been automatically dissolved by the passing of time.

*Appeal from Van Buren District Court.*—SENECA CORNELL, Judge.

FEBRUARY 8, 1918.

ACTION for damages on an injunction bond. There was a verdict for plaintiff. From the judgment entered thereon, the defendant has appealed.—*Affirmed.*

*Walker & McBeth,* for appellant.

*J. C. Calhoun,* for appellee.

EVANS, J.—The defendant sued out a temporary writ of injunction against the plaintiff herein in another action, entitled *Jacobs v. John Baldwin and R. A. Archer.* Subsequently, the writ of injunction was dissolved upon motion. Later, the plaintiff (the defendant herein) dismissed the same without prejudice. Few of the facts involved are in dispute. Jacobs was the owner of a farm of 200 acres, which he leased to Archer for one year, from March 1, 1915, to March 1, 1916. The farm and the dwelling house thereon were occupied by Archer and his family up to the middle of January, 1916. A renewal of the lease does not appear to have been in contemplation between the parties, and Archer leased a farm in another county for the year 1916. Preparatory to his contemplated removal, he held a public sale in December. At this sale, he sold considerable rough feed in the form of shock corn, with the option to the purchaser to either remove the same or to feed it upon the place. He also had upon the place considerable other rough feed,

in the form of standing cornstalks and blue grass. Baldwin purchased the removable rough feed, and exercised the option to feed it upon the place. He also had an arrangement with Archer whereby he was to bring cattle upon the place and feed the standing rough feed, at a price of one dollar per head per month. While this contract was in course of performance, Archer, about the middle of January, moved to the new place, taking with him his household goods and practically all of his belongings. A few articles of personal property belonging to him were left upon the place, with the intent on his part to come and get them later. Baldwin had a hired man in charge of his cattle, who spent much of his time in the daytime upon the place. This was the general situation when Jacobs brought his action against Baldwin and Archer, wherein he charged a breach of the lease by Archer, in that he had sublet the premises, or assigned his lease thereon. He also averred that Archer had abandoned the premises, and that he had thereby rendered void the insurance policy held by the lessor. He averred, in effect, that Baldwin was doing irreparable damage upon the place, and prayed for a mandatory writ of injunction requiring him to remove his stock from the farm and to keep the same off. He also prayed for $1,000 damages. That action was brought for the March term of court, which was to begin about March 14th. Before filing answer therein, Baldwin, as the defendant therein, filed a motion for a dissolution of the temporary injunction, upon various grounds specified therein. The substance of these grounds was that the injunction was improperly obtained. The sustaining of this motion by the court furnishes the basis of the present action on the injunction bond. The action is brought against Jacobs alone, and not against his sureties on the bond. To his action on the bond, the plaintiff adds a second count. This is a claim for damages on behalf of Archer, who has assigned his claim to the plaintiff. The claim of

damages to Archer is predicated upon the theory that the service of the writ of injunction operated as an eviction of Archer, and deprived him of the use of the premises during the last six weeks of his term of the lease.

In defense to this action, as to both counts thereof, the defendant herein pleads largely the same facts as were pleaded by him in his own petition in the first suit.

In submitting the case to the jury, the trial court withdrew from the consideration of the jury all items claimed in Count 1 of the petition, except the claim for attorneys' fees for obtaining a dissolution of the temporary writ. On the second count, he submitted to the jury the question of whether the conduct of the defendant herein amounted to a wrongful eviction of Archer from the premises. The jury evidently found in the affirmative on this question. So finding, the jury was authorized by the instructions of the court to allow the reasonable rental value of the premises for the unexpired portion of the term.

I. The defendant, at the close of plaintiff's testimony, moved for a directed verdict. In overruling this motion, the court did not err, if for no other reason than that the plaintiff was clearly entitled to go to the jury on the question of attorney fees expended in obtaining a dissolution of the injunction. We proceed, therefore, to a consideration of the more particular errors alleged by the appellant.

1. TRIAL: verdict: directed verdict: denied when one jury issue survives.

II. The trial court withdrew from the consideration of the jury the question of forfeiture of the lease. The lease contained the following proviso:

2. LANDLORD AND TENANT: leases: forfeiture *ipso facto*.

"A failure to pay the rent as agreed upon, or to comply with any of the stipulations of this lease by the said party of the second part, shall authorize the said party of the first part to consider the lease forfeited, and he may

take possession of the premises with 30 days' notice, and he may bring an action of forcible entry and detainer, as allowed by law, to recover possession."

It also contained a provision that the lessee shall commit no act upon the premises which would invalidate any policy of insurance thereon, "under penalty of forfeiture of this lease and the payment of all damages."

Taking the most favorable view of the evidence on behalf of the defendant, it showed only a breach of the provisions of the lease such as would authorize the defendant to declare a forfeiture by giving the notice provided for therein. There was no declaration of forfeiture by the lessor, within the meaning of the lease. The issue was, therefore, properly withdrawn. It is also urged that the trial court withdrew the issue of abandonment from the jury. This is a misapprehension of the record. This issue was submitted to the jury by Instruction 11, which is made the basis of another assignment of error by the appellant. We may as well say here that we see nothing wrong with the instruction of the trial court on that question. More-

3. LANDLORD AND TENANT: leases: abandonment.

over, we think the evidence would not warrant a finding that there was an abandonment by Archer, within the meaning of the law. The fact that he had moved onto the other premises would not, of itself, amount to an abandonment of his lease. Such conduct was not inconsistent with his claiming the continued benefits of the terms of his lease. The most serious proposition urged by the defendant upon the trial was that the arrangement between Archer and Baldwin amounted to a subletting of the premises or an assignment of the lease. If there has been a subletting or an assignment, this would be inconsistent with any claim of abandonment. Either a subletting or an assignment would be an assertion of right to the lease, and not an abandonment thereof. In so far, therefore, as the defendant's evidence

tended to show a subletting or an assignment, in so far did he contradict the claim of abandonment.

III. On the question of subletting or

4. LANDLORD
AND TENANT:
leases: pro-
hibiting as-
signment or
subleasing.

assignment, it is clear that Archer had no right to do either without the consent of Jacobs. If he did either, he subjected himself to forfeiture, at the option of Jacobs. But, as already indicated, no forfeiture was declared, as provided by the lease. Moreover, if it be said that the attempted subletting or assigning, as the case may be, was void for want of consent of Jacobs, then such futile attempt on Archer's part availed him nothing, as between him and Jacobs, and availed Jacobs nothing. If Archer did enter into a contract with Baldwin to sublet or assign, then, as between him and Baldwin, he was bound; and if, for want of Jacobs' consent, he was unable to perform his contract with Baldwin, he was still liable thereon to Baldwin in the form of damages. The real grievance of Jacobs, therefore, was—and he so alleged it in his petition in the first case—that Baldwin had taken possession of the premises as a pretended assignee, or sublessee.

It may be conceded that the arrangement between Archer and Baldwin bordered close to an assignment, or subletting. And yet there is surely a field within which a tenant may freely contract with third parties for the sale and utilization of the products of the farm. It is not unusual that an occupant of land deems it advantageous to sell his matured crop while standing in the field. Such an arrangement necessitates an entry by the purchaser for the purpose of utilizing the crop. It has been held that such an arrangement is not a violation of a proviso against subletting. *Kirkpatrick v. Fonner*, 82 Neb. 32 (116 N. W. 779). Taking the testimony of Archer and Baldwin as true, as to what the arrangement between them was, we think it quite clear that it worked no violation of the terms of

the lease.   The jury, by its verdict, found the facts in ac-
cord with such testimony.

IV.   Turning to the question of the
eviction of Archer, as the result of the serv-
ice of an injunction upon Baldwin, the de-
fendant complains of the instruction of the
court upon that question.   This was Instruction No. 8, and
was one to which the defendant did not except in the lower
court.   This, of itself, would prevent our basing a reversal
upon it upon this appeal, even if erroneous.   Sufficient to
say that, notwithstanding the want of exception, we have
read the instruction, and see nothing wrong with it, as a
statement of the law.   It was legally possible for the in-
junction upon Baldwin to work a practical eviction of
Archer from the premises.   Though the injunction was not
served upon Archer, yet it is a fact of some significance that
Archer was made a codefendant with Baldwin in the case.
Baldwin could not have fed his cattle upon the place with-
out becoming guilty of violating the writ of injunction.
It necessarily follows that Archer could not carry out his
agreement with him, and furnish him the privilege of feeding
his cattle upon the place, without likewise violating the in-
junction.   The natural effect of the injunction, therefore,
was to put Archer in the position of having breached his
contract by his inability to carry it out.   Naturally, also,
he was deprived of the compensation stipulated for, and
in that sense lost the benefit of the use of the premises for
the unexpired term.   True, he might have made a similar
arrangement with some other third party, and in that way
avoided the injunction, in a very technical sense.   Needless
to say that such a course on his part would have been
mere trifling with the orders of the court, and would have
received scant recognition, if he had been cited for con-
tempt.   What we hold here is that the instruction of the

5. LANDLORD
AND TENANT:
use of prem-
ises: eviction.

court, No. 8, is the law of the case on the question of eviction.

V. It appears in the record that the

**6. INJUNCTION: liability on bonds: belated plea to defeat.** motion to dissolve the writ of injunction was filed sometime after March first, the date of the expiration of the lease. It is urged in argument that the writ had served its purpose, and had, in a sense, died, by the expiration of the term of the lease, and that the motion to dissolve the same was wholly needless, and for that reason nothing should be allowed therefor. This contention was not urged at the time of the hearing on the motion for the dissolution. That motion specified meritorious grounds only, and tendered an issue on the wrongfulness of the injunction in the first instance. It was passed upon by the court upon its merits. The finding of the court, therefore, necessarily furnishes a basis for an action on the bond. The fact that the writ had no further function to serve was a proper enough consideration, as bearing upon the reasonableness of the expense incurred, perhaps, in obtaining the dissolution; but we see no further significance to it. It is not available to the defendant to wholly defeat the present action. The defendant could not use the writ for the purpose of obtaining possession of the land, and then treat the expiration of the term of the lease as an adjudication of his right to the temporary writ in the first instance.

VI. It is also urged by the appellant that plaintiff was not entitled to recover attorney fees for services in the main action, but only for services rendered in obtaining the dissolution of the temporary writ. The trial court so instructed. It is urged, however, that there was no evidence of the value of attorney fees for that particular service, and that such evidence of value as was given covered the services for the whole case. We think this contention is not sustained by the record. The witness Newbold did

testify particularly with reference to the value of the particular services necessary to be rendered in the preparation and presentation of the motion for dissolution. Something is claimed in argument for the alleged acts of Baldwin, tending or threatening to commit damages and waste upon the premises. It is said that he had threatened to bring a gasoline engine on the place, for the purpose of attaching to the pump, and that he proposed to "pump hell out of it;" and that he brought a can of gasoline upon the premises, which was forbidden by the lease; and that the vacation of the dwelling house operated to forfeit the insurance.

If there was any insurance upon the buildings, the proof of the fact was overlooked in the trial. Nor does there appear to be any provision of the lease that required Archer, as a matter of duty, to occupy the dwelling thereon; although it may well be inferred therefrom that it was naturally intended that he would occupy it. From any point of view, these acts could only amount to breaches of the lease on the part of Archer which subjected him to a forfeiture at the option of Jacobs. As already indicated, the option was not exercised. The foregoing comprises the principal points argued. We have given the record careful consideration, and find nothing therein that would warrant a reversal of the judgment.

The judgment below is, therefore,—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.