[No. 28957. Department Two. September 9, 1943.]

ANNA VANDER VATE, *Respondent*, v. ANNA WATSON *et al.*, *Appellants.*[1]

[1]Reported in 140 P. (2d) 964.

*E. A. Cornelius,* for appellants.

*McCabe & McCabe,* for respondent.

ROBINSON, J.—This action arises out of an unfortunate and long-standing quarrel between a mother and her son, on the one hand, and her daughter and her daughter's husband, on the other. The action was brought by the daughter, Anna Vander Vate, against her mother, Anna Watson, and Frank Watson, for the purpose of enjoining interference with the quiet and peaceable possession of leased premises.

Although both defendants have appealed, Anna Watson has the principal interest in the matter, and, for convenience, we will refer to her in this opinion as though she were the sole appellant.

Charles Watson died on May 7, 1939, leaving a will in which his daughter, Anna Vander Vate, was appointed his executrix. Her mother, Anna Watson, acquired the full ownership of a large wheat farm near Pomeroy, Washington, as a result of a partition agreement between herself and daughter in the course of the adjustment of the affairs of the Charles Watson estate. As part of this agreement, the appellant's farm was leased to her daughter, Anna Vander Vate. Her mother repudiated the settlement, and made an unsuccessful attempt to have it set aside. She later brought an action for unlawful detainer. The appellant has quoted, in her brief, the decree entered by the trial court, omitting only the formal portions thereof. We think that the nature of the case, as well as the questions raised on appeal, may be best shown by requoting the decree as set out in appellant's brief, since the appellant says that,

in quoting the decree, she has italicized those portions which she believes erroneous:

" . . . the Court finds that the plaintiff is in possession of the real estate described in the lease attached to the amended complaint herein as Exhibit A, as the tenant thereof under defendant, Anna Watson, as landlord, except that said landlord has reserved to herself that portion of said premises used in connection with the buildings thereon, including the garden patch, as it existed on the 16th day of December, 1939, yard, barnlot, together with all the farm buildings on said premises, including the use of the land leading thereto from the highway for ingress and egress, *such land to be jointly used for ingress and egress by both the landlord and the tenant, each without interference with such use by the other,* and that each of such parties shall have free use of the well, each without interference with such use by the other; and that plaintiff is entitled to the possession, use and occupation of said real estate for the term ending on the 1st day of November, 1944, subject to the terms and conditions of said lease, and so long as she complies with such terms and conditions she is entitled to the quiet and peaceable possession thereof, without interference on the part of defendants; that defendants have interfered with such quiet and peaceable possession and enjoyment, wrongfully and in violation of plaintiff's rights; *they have interfered with plaintiff's right to pasture grass and stubble thereon;* have interfered with the removal of property of plaintiff from said premises; have trespassed upon the leased premises by pasturing horses, cattle and hogs thereon; *have interfered with plaintiff's use of the water from the well on the reserved premises, and with ingress and egress through the lane leading to the highway by plaintiff,* her servants and employees; have extended the area formerly used as a garden and have fenced the extended area; have interfered with the use of gates on the leased premises, and on the lane referred to herein; *have removed hog wire from the fences on the leased premises; have wrongfully interfered with fence repairs on the leased premises;* and the defendant, Anna Watson, has in many of these things been aided and abetted by and has acted through the defendant, Frank Watson; *that the use or employment of the defendant, Frank Watson, by defendant, Anna Watson, has tended and will tend to aggravate and annoy the plaintiff and to interfere with and disregard her rights;* all to plaintiff's damage,

but that except for nominal damages the plaintiff has, in open court, waived actual damages. That the court has filed herein a memorandum opinion, which is hereby referred to and made a part hereof.

"Now, the law and the evidence being by the court understood and fully considered, on motion of plaintiff,

"*It is ordered, adjudged and decreed* by the court that the said defendants and each of them, so long as said lease shall remain in force and effect, be and they are hereby enjoined and restrained from doing or committing any of the acts or deeds hereinbefore set forth, or continuing the same, by themselves or through their agents, servants or employees; that the defendant, Anna Watson, be and she is hereby ordered and directed forthwith to vacate the extended portion of the garden ground and to remove the fence enclosing such extended portion of the garden ground, and she be and is hereby *ordered and directed to restore the hog wire to the fence,* which she has heretofore removed; *and she be and is hereby enjoined and restrained from using or employing the said Frank Watson as her agent to go upon the leased lands or to inspect fences, buildings, orchard, windmills, plowing, cultivating or any other work thereon, and the said Frank Watson be and he is hereby enjoined and restrained from acting as such agent.*

"And the said defendants and each of them, so long as said lease shall remain in force and effect, be and they are hereby restrained and enjoined from doing or committing any other or similar acts or deeds, or in anywise or at all interfering, wrongfully, with plaintiff's quiet and peaceable possession of said leased premises; *from pasturing any livestock thereon; from interfering with the free use of the water from the well by plaintiff; from opening gates found closed and from closing gates found open; from interfering with the use of the lane from ingress and egress by plaintiff,* her servants and employees, and from doing any other act or thing to interfere with plaintiff's quiet and peaceable possession wrongfully." ·

■ The attorney who represents the appellant in this court did not represent her at the trial, and, to a large extent at least, has had to depend on the written record, as we are wholly compelled to do. His first point is that many of the things enjoined are trivial, and authority is cited to the effect that an injunction is an extraordinary remedy

and should not be employed except in extraordinary cases. We agree that, to a large extent, the things complained of are trivial when considered individually, but they were continually recurring, and, in our opinion, an application for injunctive relief was not inappropriate.

We have read the record, and we are not disposed to meddle with the trial court's purely factual findings; nor do we think a discussion of the evidence would serve any useful purpose. With the majority of the findings we unhesitatingly agree, and those founded on conflicting evidence we would hesitate to question, in view of the fact that the trial judge had the opportunity of seeing the witnesses and appraising their credibility as they gave their testimony, while we see only a typewritten transcript.

█ The first assignment of error involves a construction of the lease. It is contended that the court erred in holding that the lane was to be used jointly for ingress and egress. The lease, as originally executed, contained the following reservation:

"It being expressly agreed and understood that Lessor does and shall at all times reserve unto herself the right to live in and occupy for her home, the house, cow stall in the barn, chicken house and garden patch for her own use free from charge of any nature whatsoever, and straw for her own use.. Both parties hereto shall have free use of well."

It will be noted that this did not reserve the use of the lane. It passed to the lessee by the lease and it was necessary to her occupancy of the farm, not because it was a means of ingress and egress to the farm buildings, but because she needed it in order to reach certain of the outlying fields conveniently. The appellant wanted a more liberal reservation, which her daughter was willing to give, and it was substituted for that paragraph, above quoted, by written agreement of the parties some months after the execution of the lease. The paragraph thus substituted reads as follows:

"It being further expressly agreed and understood that at all the time this lease shall remain in full force and effect

after June 30, 1940 the Lessor reserves, during said period, from the operation of this lease that portion of said premises used in connection with the buildings thereon, including the garden patch, yard, barnlot, together with all the farm buildings on said premises, *including the use of the lane leading thereto from the highway for ingress and egress."* (Italics ours.)

It will be noted that this expressly reserves from the operation of the lease the garden patch, yard, barnlot, and the farm buildings, but, when it comes to the lane, only "the use" of it "for ingress and egress." The respondent daughter had complete dominion over the lane through her lease, and we think that, in consenting to the insertion of the paragraph above quoted, she granted the appellant only the right to its use for ingress and egress from the highway.

On two occasions at least, the respondent permitted third parties to pasture cattle temporarily on the stubble after the crop had been removed. To this, appellant violently objected, and some of the acts enjoined spring from that grievance. It is contended that she had the right to object, on the ground that this was a breach of the lease which provided that no part of the premises should be "sublet or underlet without the written consent of the Lessor." But these temporary pasturage arrangements did not purport to create any kind of an estate in the persons who pastured their cattle in the Watson fields.

A similar contention was before the supreme court of California in *Harrelson v. Miller & Lux, Inc.,* 182 Cal. 408, 413, 188 Pac. 800. Plaintiff had leased a farm to one Crow. During the term of the lease, Crow granted to the defendant the right to pasture sheep. Among other things, the court, in a unanimous *En Banc* decision, said:

"Plaintiff insists, however, that whatever may have been Crow's rights to pasture the grain land himself, the granting of the right to the defendant amounted to a violation of the covenant in the lease against subletting. The contract between Crow and defendant amounted essentially to a sale of the feed coupled with a mere license to come upon the land to use it. If Crow had a right to sell the feed at all he certainly had a right to grant the right to use it on .

the land, for obviously the stubble at least could not be otherwise utilized. That the granting of such a right is not a violation of a covenant against subletting has been directly held in *Baldwin v. Jacobs*, 182 Iowa, 789, [166 N. W. 271, 273]."

■ The appellant's principal objection to the decree is to that portion which reads as follows:

" . . . and she be and is hereby enjoined and restrained from using or employing the said Frank Watson as her agent to go upon the leased lands or to inspect the fences, buildings, orchard, windmills, plowing, cultivating or any other work thereon, and the said Frank Watson be and he is hereby enjoined and restrained from acting as such agent."

The trial judge filed a memorandum opinion the first paragraph of which is as follows:

"Much of the ill feeling and bitterness between the parties to this action is without a real basis and would doubtless disappear if each could be fair and reasonable in dealing with the other. Frank Watson seems the most disturbing element in this unfortunate situation."

The final paragraph of the memorandum reads as follows:

"Mrs. Watson has a right to go upon the leased land and inspect fences, buildings, orchard, windmills, plowing, cultivating and all other work, and insist that it be done in a manner required by the lease, but she has no right to do this through an agent whom she must know seeks to promote a quarrel with plaintiff, and aggravate, annoy and disregard the rights of plaintiff."

There is no doubt in our minds that the court was right in finding that Frank Watson, son of the appellant and brother of the respondent, was the most disturbing element in the situation. It would, perhaps, have been sufficient to have enjoined him—he being a party defendant—from continuing his past conduct, but, in view of the fact that appellant knew that, in looking after her affairs, he was continually and wrongfully annoying and persecuting the lessee, and in view of the fact that she is responsible for

the acts of her agent, we are not disposed to thwart the trial court's obvious attempt to make its injunction adequately comprehensive.

The decree appealed from is affirmed.

SIMPSON, C. J., BEALS, and GRADY, JJ., concur.

BLAKE, J., dissents.