[No. 2039–3.  Division Three.  July 18, 1977.]

LAWRENCE G. FRAZIER, ET AL, *Appellants,* v. PHILLIP KERN, ET AL, *Respondents.*

*Donald H. Bond* and *Halverson, Applegate & McDonald,* for appellants.

*Kenneth D. Beckley* and *Schuller, Frederick & Beckley,* for respondents.

MUNSON, C.J.—The plaintiffs Frazier appeal from an order forfeiting a grazing lease. Mr. Kern leases approximately 26,000 acres of grazing land located in Kittitas County from a Mr. Sanders, administrator for Kittitas Ranching, Inc., a corporation. Mr. Sanders places complete reliance upon Mr. Kern in the management of the range.

In 1970, Mr. Kern entered into a 5-year sublease of this land with Mr. Frazier. In the spring of 1975, these parties discussed the possibility of a second 5-year lease. Other qualified people had approached Mr. Kern about leasing the range; one, in particular, desired to run a combined cattle-sheep operation. Mr. Frazier's management of the range had been excellent; he represented to Mr. Kern that this range was a vital part of his own cattle operation. Thus, because of this representation of personal use and necessity and their prior relationship, Mr. Kern decided to lease the property at an annual rental of $14,000 to Mr. Frazier for an additional 5 years, commencing November 1, 1975. The lease as executed in April provided in part:

Use of Land

The demised premises shall be used by the Lessee for pasturage and grazing. The Lessee covenants and agrees to graze said premises in conformity with the recognized grazing practices currently followed in the area.

Assignment

The Lessee shall not assign this lease or enter into any sublease without first obtaining the written consent of the Lessor.

Forfeiture

Time is of the essence of this lease and it is hereby agreed that any breach of the covenants and agreements

of this lease by the Lessee shall be brought to the attention of the Lessee by written notice sent by registered mail.

Apparently between April and October 1975, cattle prices dropped. Consequently, Mr. Frazier decided to temporarily alter his operations and, rather than having a cow–calf operation, run yearlings. He discontinued use of his pasturage in the Walla Walla–Blue Mountain area, used primarily during the spring and fall, leased some additional land near Boardman, Oregon, and discussed with Mr. Ronnie Bloxham the possibility of Mr. Bloxham grazing some 600 head of his cattle on the Sanders Range. Ultimately, Mr. Frazier and Mr. Bloxham entered into an agreement whereby Mr. Boxham's cattle would be grazed upon the Sanders Range at a fee of $7 per head per month, and further, that Frazier would: (a) control the range and movement of the cattle; (b) supply salt and provide hay in emergencies; (c) repair fences and gates; and (d) generally supervise the cattle and provide the necessary help to do so. Mr. Bloxham was to pay the monthly head fee, provide hay if there was an extremely bad winter, haul the cattle in and out, and care for and remove problem cattle. It was anticipated that Mr. Bloxham's cattle would occupy the range principally between November and the following May. In addition, Mr. Frazier ran about 100 head of his own cattle and 100 head of his foreman's cattle.

Mr. Kern learned of this arrangement in March of 1976, and thereafter on March 26, sent a notice of intent to declare a forfeiture to Mr. Frazier, stating that Mr. Frazier's actions "in sub–leasing and/or assigning said lease to Ron Bloxham and other third parties and allowing said Ron Bloxham and other third parties to graze their cattle on the demised premises without first obtaining written consent from the Lessors constitutes a breach . . ." and provided 30 days in which to correct the specified breaches.

On April 23, the Fraziers brought an action to enjoin the forfeiture, and a temporary restraining order was issued pending hearing on the merits. On April 27, the Kerns

declared the forfeiture complete, inasmuch as the alleged breaches had not been corrected, and the following day counterclaimed, seeking forfeiture of the lease and restitution of possession of the premises. On May 20, 1976, Mr. Bloxham's cattle were removed.

After hearing, the court found that Mr. Frazier had breached the lease in that (a) he had used the range for grazing cattle other than his own; (b) he had entered into a sublease without the consent of Mr. Kern; and (c) once the breaches had been called to his attention, Mr. Frazier failed to cure the breaches within 30 days. The court then forfeited the Fraziers' interest in the remaining term of the lease, required the Fraziers to pay rent up through the date of the judgment, and awarded attorney's fees to the Kerns.

■ The Fraziers' first assignment of error addresses the court's finding of a sublease from the Fraziers to Mr. Bloxham without the Kerns' written consent.

> There is a difference between the assignment of a leasehold interest and a subletting. By assignment, the lessor parts with his whole interest in the estate, whereas, by a sublease, he grants an interest less than his own, reserving to himself a reservation.

*McDuffie v. Noonan,* 176 Wash. 436, 439, 29 P.2d 684 (1934). *Cf. Lindley v. De la Pole,* 131 Wash. 657, 661, 230 P. 851 (1924); 49 Am. Jur. 2d *Landlord and Tenant* § 480, at 469 (1970). Clearly, there was no assignment since Mr. Frazier did not part with his whole interest in the estate; nor do we find the existence of a sublease, inasmuch as Mr. Frazier did not grant Mr. Bloxham an interest less than his own and merely retain a reservation. Mr. Frazier, in fact, entered into an agistment which is "a particular kind of bailment under which a person, for a consideration, takes in animals for care and pasturing on his land." *Hatley v. West,* 74 Wn.2d 409, 410 n.1, 445 P.2d 208 (1968); *cf. Vander Vate v. Watson,* 19 Wn.2d 68, 73, 140 P.2d 964 (1943). As noted in *Vander Vate,* "these temporary pasturage arrangements did not purport to create any kind of estate in the persons who pastured their cattle . . ."

*Enders v. Wesley W. Hubbard & Sons, Inc.,* 95 Idaho 590, 513 P.2d 992, 71 A.L.R.3d 767 (1973), is distinguishable. In *Enders,* the third person controlled the number of cattle on the premises, and the court specifically noted that the "entire pasturage was sold . . . for several years . . . for an annual gross rental figure." Such was not the case here. Thus, we are constrained to disagree with the trial judge and conclude that the agreement between Mr. Frazier and Mr. Bloxham was not a sublease, but was an agistment.

The court also found that in the past dealings between the parties,[1] when the cattle of others had been placed upon the property or when Mr. Frazier entered into a partnership with another person and the partnership had placed cattle upon the range, Mr. Kern had been notified and acquiesced in that action. Here, he had not been consulted either prior to Mr. Bloxham's cattle being placed upon the range, nor at any time thereafter. The court accepted Mr. Kern's testimony that his reason for entering into the second lease with Mr. Frazier was because of (a) the good personal relationship which they enjoyed; (b) Mr. Frazier's representation that he needed the range for his own personal operation; and (c) Mr. Frazier's competent management of the range. The court further concluded that Mr. Frazier's conduct in allowing Mr. Bloxham's cattle to come onto the range was a breach of the lease, inasmuch as he had not obtained Mr. Kern's consent.

The lease contains no provision explicitly prohibiting a third person's cattle being placed upon the range. The court, by finding the personal relationship and a violation thereof, added an implied covenant to the effect that Mr. Frazier had the right to run only his own cattle or those cattle owned by others to which Mr. Kern consented.

There is no contention that this lease was anything but a complete and accurate integration of the terms mutually

---

[1]Although Mr. and Mrs. Frazier and Mr. and Mrs. Kern are named parties, for convenience, we refer only to Mr. Frazier and Mr. Kern.

agreed to by the parties. *Nashem v. Jacobson,* 6 Wn. App. 363, 492 P.2d 1043 (1972). The court did admit, upon the basis of clarifying an ambiguity, parol evidence to interpret that portion of the lease under the caption "Use of Land" which states "the demised premises shall be used by the lessee for pasture and grazing." Mr. Frazier contends the court wrongfully applied parol evidence by interpreting that it was the intention of the parties that this use be restricted to Mr. Frazier's cattle and did not include the pasturage of third parties' cattle.

Mr. Kern's prime concern in selecting a lessee was his managerial competence over the range. Having found an agistment as opposed to an assignment or sublease, the effect of that finding is that Mr. Frazier retains managerial and operational responsibilities over the utilization of the range land. There is no contention the number of cattle exceeded that which could be accommodated; that Mr. Frazier either improperly managed or operated the range; nor that there is any difference between cattle which is dependent upon the ownership of the cattle.

Although we do not find error in the admission of parol evidence under these facts, we do find that the court erred in relying upon Mr. Kern's uncommunicated intention in order to alter the lease as it was written. Such a result cannot be supported under a theory of interpretation. *Dwelley v. Chesterfield,* 88 Wn.2d 331, 560 P.2d 353 (1977), *affirming Dwelley v. Chesterfield,* 14 Wn. App. 480, 542 P.2d 1261 (1975).

Having so concluded, we find that the forfeiture of the balance of the lease was error.

The judgment is reversed and the case remanded to consider damages Mr. Frazier suffered, if any, by the loss of use and possession of the land during the pendency of this

appeal and such other action as the court may deem appropriate in accordance with this opinion.

GREEN and MCINTURFF, JJ., concur.

Reconsideration denied August 17, 1977.