**Burton HUTTON, Plaintiff, Appellant and Cross-Appellee,**

**v.**

**Blaine L. JANZ, Leona M. Janz, Alfred E. Janz and Irene Janz, Defendants, Appellees and Cross-Appellants.**

**Civ. No. 11061.**

Supreme Court of North Dakota.

May 13, 1986.

McGee, Hankla, Backes & Wheeler, Minot, and Robert D. Hartl, Rugby, for plaintiff, appellant and cross-appellee; argued by Orlin W. Backes.

Eaton, Van de Streek & Ward, Minot, for defendants, appellees and cross-appellants; argued by Jonathan C. Eaton.

ERICKSTAD, Chief Justice.

Burton Hutton appealed from a county court judgment in his action for the recovery of damages and the eviction of Blaine, Leona, Alfred, and Irene Janz (hereinafter collectively referred to as Janz) from Hutton's ranch. Janz cross-appealed. We affirm in part, reverse in part, and remand.

On January 26, 1982, Hutton leased a ranch of approximately 2,550 acres to Janz for a term of five years. The lease required Janz to "well and faithfully till and farm" the ranch "in a good and husbandlike manner." Janz was also required to "furnish at their own cost and expense all proper and convenient tools, utensils, farm implements and machinery, ... to carry on and cultivate said farm...." The lease further provided:

"It is also agreed that in case said parties of the second part neglect or fail to perform any of the conditions or terms of this contract on his part to be performed, first party is hereby authorized and empowered to enter upon said premises and take full and absolute possession of the same, ...

\*　　\*　　\*　　\*　　\*　　\*

"The right to lease or sub-let any part of the farm or to assign this lease to any person or persons is prohibited unless prior written agreement from the party of the first part is had by the party of the second part.

\*　　\*　　\*　　\*　　\*　　\*

"4. It is agreed that ⅓ of the gross sale proceeds of livestock, farm produce and rentals shall be tendered first party to apply to annual farm rentals due under terms of this lease."

Also on January 26, 1982, Hutton and Janz executed a purchase and sale agreement pursuant to which Hutton sold to Janz farm equipment and cattle for $370,-000, payable in installments from the proceeds of livestock and produce.

In 1984, all of Janz's cattle and machinery were sold. In April 1985, without Hutton's consent, Janz and Dennis Amsbaugh entered into a livestock pasturage and feeding contract for the year 1985 and renewable for 1986. Under that agreement, Janz agreed to accept for pasturage and care on the Hutton ranch (except a part known as the Poison Lake pasture) approximately 200 to 250 cow/calf pairs for the grazing season and so long as hay and other feedstuff raised on the ranch were sufficient. Janz retained the right to limit the number of livestock if drought conditions limited the carrying capacity of the property. Amsbaugh was to furnish salt, veterinary care, and medicine. Janz was to "see to the maintenance of fences and proper herding and care of the cattle." The agreement also provided that Amsbaugh could cause the tillable acres:

"to be seeded to such crop as will provide feed for his cattle and Janz agrees to use the whole of such hay or other feed produced for the feeding of the Amsbaugh livestock after the end of the grazing season and to continue such feeding until the feed is exhausted...."

Amsbaugh agreed to pay Janz $20,000. Amsbaugh did not place any of his own cattle on the ranch but arranged to have others place cattle on the ranch. Janz admitted on cross-examination pursuant to Rule 43(b), N.D.R.Civ.P., that Hutton would not "receive one third of the gross sale proceeds of all livestock presently out on the ranch."

Asserting that Janz was in default of the lease for nonpayment of rent, removing produce without division thereof, assigning or subletting the property to a third party, and failing to operate in a good and husbandlike manner, Hutton sued Janz for damages and eviction. Hutton thereafter allowed Leroy Hellickson to place some cattle in pastures not then being grazed pursuant to the Janz-Amsbaugh agreement and to till approximately 450 acres of cropland. Trial resulted in a judgment: (1) dismissing Hutton's claim for eviction; (2) awarding Hutton $14,772.36 for rent; (3) dismissing Hutton's claim for damages other than rent; and (4) decreeing that Hutton is entitled, when received by Janz, to "a one-third share of the balance due on the

Amsbaugh contract and the rent due from Krueger." [1]

Hutton and Janz both appealed from the judgment. Hutton has raised the following issues:

"I. Whether the operation of the ranch constituted a material breach of the lease provisions which require Janz 'to faithfully till and farm for Five (5) years . . . in a good and husbandlike manner' the leased property and which require Janz to 'furnish at their own cost and expense all proper and convenient tools, . . . farm implements and machinery . . . to carry on and cultivate said farm during the seasons.'

"II. Whether the Livestock Pasturage and Feeding Contract between Janz and Amsbaugh is a breach of the lease provision which requires Hutton's consent 'to lease or sublet any part of the farm or to assign this lease to any person or persons'."

Janz has raised the following issues on cross appeal:

"1. Should the lower court have allowed defendants Janz a credit against Hutton's rental claim based on Hutton's rental of a portion of the premises to a third party in 1985?

"2. Should the court have charged defendants Janz for cultivation performed by Hutton, or his contractee?"

### 1. Mismanagement and machinery

■ Hutton argues that, because all of Janz's cattle and machinery were liquidated at a foreclosure sale in 1984, "Janz does not have the proper tools and farm machinery to operate the ranch" and that there is "a clear violation of the lease provisions which required Janz to provide the proper machinery and farm the land." While the lease required Janz to furnish machinery at his expense, we have not been persuaded that Janz was required to own the machinery needed to "carry on and cultivate said farm." Thus, we are not persuaded that Janz breached the lease in this regard.

■ Hutton has asserted that Janz violated the lease provision requiring him to operate the ranch "in a good and husbandlike manner" and has drawn our attention to evidence of poor husbandry. The trial court stated in its findings of fact:

"VII.

"Evidence was received bearing on defendants' care and management of the premises since the inception of the lease. This evidence was conflicting and it is found that such managerial failure as may be attributed to defendants was not of such nature as to be material and, in any event, has been waived under the findings made above."

Findings of fact are presumptively correct. *Alumni Ass'n of Univ. v. Hart Agency, Inc.*, 283 N.W.2d 119 (N.D.1979). "The complaining party bears the burden of demonstrating that error exists in the trial court's findings of fact." *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821 (N.D.1982).

"A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. That we may have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court." [Citations omitted.] *Byron, supra*, 328 N.W.2d at 821.

Our review of the record has not left us with a definite and firm conviction that a mistake has been made. Therefore, the finding is not clearly erroneous.

### 2. Pasturage and feeding contract

The trial court determined that the contract between Janz and Amsbaugh did not constitute an assignment or sublease and concluded that Janz was entitled to dismissal of Hutton's claim for eviction.

■ The construction of a written contract to determine its legal effect presents

---

1. We have not been made aware of who Krueger is or his relationship to the controversy.

a question of law, fully reviewable on appeal. *Industry Financial Corp. v. Redman*, 383 N.W.2d 847 (N.D.1986); *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192 (N.D.1986); *Miller v. Schwartz*, 354 N.W.2d 685 (N.D.1984); *West v. Alpar Resources, Inc.*, 298 N.W.2d 484 (N.D.1980). In our view, the contract between Janz and Amsbaugh constituted a sublease. Because it was entered into without Hutton's consent, it was a breach of the lease between Hutton and Janz.

■ "A subletting is a leasing by the lessee of a whole or part of the premises during a portion of the unexpired balance of his term, ..." 3A, G. Thompson, *Commentaries on The Modern Law of Real Property*, § 1210, p. 50 (1981 Repl.). Generally, agistments [2] and temporary pasturage contracts entered into by lessees of real property and third parties are not held to be assignments or subleases. *See, e.g., Harrelson v. Miller & Lux, Inc.*, 182 Cal. 408, 188 P. 800 (1920); *Baldwin v. Jacobs*, 182 Iowa 789, 166 N.W. 271 (1918); *Kirkpatrick v. Fonner*, 82 Neb. 32, 116 N.W. 779 (1908); *Bond & Mortgage Corp. v. Pulley*, 95 Mont. 337, 26 P.2d 645, 89 A.L.R. 1320 (1933); *Golden v. Mount*, 32 Wash.2d 653, 203 P.2d 667 (1949); *Vander Vate v. Watson*, 19 Wash.2d 68, 140 P.2d 964 (1943); *Frazier v. Kern*, 18 Wash.App. 93, 566 P.2d 956 (1977).

In *Enders v. Wesley W. Hubbard and Sons, Inc.*, 95 Idaho 590, 513 P.2d 992, 71 A.L.R.3d 767 (1973), however, a pasturage contract was declared to be a sublease. The owner of a ranch leased it to Hubbard for $4,000 per year for a term of years. The Enders ranch was additional pasture for Hubbard, but not its home base. Hubbard sold its base ranch and cattle and subsequently:

"determined to 'sell the grass' by permitting others to pasture it.... As a result, in 1969, the lessee, acting through Deon Hubbard, turned over the pasturing operation to a joint venture between a Mr. Rigby and a Mr. Cochran who after that time paid an annual rental for all of the grass on the property.... From that time on Rigby & Cochran generally controlled whose cattle, and in what numbers, would go on to the Enders ranch...." *Enders, supra*, 513 P.2d at 996–997.

Hubbard continued to handle the irrigation, fencing, and other repairs on the premises. After discussing *Golden v. Mount, supra; Vander Vate v. Watson, supra; Bond & Mortgage Corp. v. Pulley, supra; Harrelson v. Miller & Lux, Inc., supra*, and *Baldwin v. Jacobs, supra*, the court stated, 513 P.2d at 999:

"The foregoing cases, though not exhaustive, generally reflect that where a lessee is farming or pasturing a property, and he permits the grazing of less than all of the premises, or for a temporary period all of the premises, the courts generally construe the arrangements to be one of license rather than a sublease. However, in this case, the entire pasture on the Enders ranch, which was the only agricultural commodity produced by the ranch, was sold for several years to Rigby & Cochran for an annual gross rental figure. More importantly, Rigby & Cochran generally controlled the numbers of cattle which went on to the premises, and whose cattle could be brought on to the premises. On balance, we feel that the totality of the sale of all of the pasturage rights, together with the transfer of substantial control of those pasturage rights to Rigby & Cochran, constitutes a subletting of the premises in violation of the terms of the lease."

To the extent that Janz, in contracting with Amsbaugh, transferred the right to use all of the grassland and cropland on the premises (except for a small portion known as the Poison Lake pasture), which were the source of all of the agricultural commodities produced on the Hutton ranch,

---

**2.** An agistment is the taking in, for a consideration, of another's livestock for care, feeding and pasturage. *See,* Black's Law Dictionary, p. 88 (Rev. 4th Ed.). *See also, Hatley v. West,* 74 Wash.2d 409, 445 P.2d 208 (1968).

that arrangement is similar in effect to that involved in *Enders, supra.* In one important respect, Janz's contract with Amsbaugh went beyond that involved in *Enders.* The subletting in *Enders* had no effect upon the rent or method of calculating the rent to be received by the landowner. In the instant case, however, Janz's contract with Amsbaugh has resulted in a change in the amount of rent due Hutton and the method by which it is calculated. Under the lease with Janz, Hutton was to receive "⅓ of the gross sale proceeds of livestock, farm produce and rentals." As a result of the contract between Janz and Amsbaugh, Hutton no longer receives one-third of the gross sale proceeds of livestock and farm produce but is limited to receiving one-third of the amount of cash Janz receives from Amsbaugh.

■ Under the circumstances, we conclude that Janz's contract with Amsbaugh constituted a subletting of the Hutton ranch in violation of Janz's lease from Hutton. Hutton did not waive his right to terminate the lease. Forfeitures of estates under leases are not favored. *Towne v. Sautter,* 326 N.W.2d 694 (N.D.1982). "Whether a contract should be canceled for breach depends upon the facts of each case." Syllabus 3, *Sandberg v. Smith,* 234 N.W.2d 917 (N.D.1975). We believe that Janz's subletting of the premises without Hutton's consent in a manner that changed the amount of rent to be received by Hutton and the method by which the amount is to be calculated justifies termination of the lease from Hutton. We therefore conclude that the trial court erred in dismissing Hutton's claim for eviction and we reverse that part of the judgment.

### 3. Credit for Hutton's rental of a portion

The trial court found that Janz did not use the Poison Lake pasture in 1983 because it had been overgrazed in 1982. The court found that Hutton, without Janz's consent, had rented the pasture to others in 1984 and 1985. In computing the amount of rent due Hutton, the trial court gave Janz credit for two-thirds of the amount of rent Hutton received for the Poison Lake pasture in 1984 but did not do so for the 1985 rent. Janz has asserted that "[i]t was clearly erroneous for the trial court to have (implicitly) found that in one case the credit was due Janz and not in the other." That issue has been mooted by our determination that Hutton was entitled to evict Janz because of the subletting to Amsbaugh.

### 4. Charge for cultivation

■ In computing the rent due Hutton, the trial court charged Janz $2,250 for tillage of cropland done by a Mr. Hellickson. The trial court made the following finding of fact:

"XV.

"Though the cultivation of 450 acres of cropland by Hellickson as noted above, was done at the instance of plaintiff and without the knowledge or consent of defendants, the same nevertheless conferred a benefit upon defendants and the court finds that such benefit was worth $5.00 an acre for the 450 acres cultivated and made more ready or nearly ready for seeding to a feed crop in 1985. Conversely, the cattle placed on the premises by Hellickson, at the direction of Hutton, have exhausted the grass on 240 acres of land the fair rental value of which was testified by Hellickson and Hutton to be worth $12.50 an acre and $3,000.00 is therefore charged against Hutton."

In Finding of Fact XIII, the trial court found that Hutton was due rent of $17,122.36 and adjusted that amount as follows:

"Adjustments

| | | |
|---|---|---:|
| "1984 | Rent of 240 acres, received by Hutton $2,400.00 less ⅓ due Hutton | − 1,600.00 |
| "1985 | Expense of plowing 450 acres @ 5.00 | + 2,250.00 |
| "1985 | Pasture exhausted by Hellickson | − 3,000.00 |
| | Net rentals due Hutton | $14,722.36" |

Janz asserts that the adjustment for Hellickson's plowing of 450 acres was errone-

ous. The trial court's findings are presumptively correct. *Alumni Ass'n of Univ. v. Hart Agency, Inc., supra.* Janz has the burden of demonstrating error in the findings. *Byron v. Gerring Industries, Inc., supra.* In our view, Janz has not met that burden.

For the reasons stated, that part of the judgment granting Hutton rent due him is affirmed, that part dismissing Hutton's claim for eviction is reversed, and the matter is remanded for entry of judgment in accordance with this opinion, with statutory costs on this appeal awarded to Hutton.

VANDE WALLE, LEVINE and MESCHKE, JJ., and LARRY M. HATCH, District Judge, concur.

HATCH, District Judge, sitting in place of GIERKE, J., disqualified.