[No. 43-40336-3.    Division Three.    February 17, 1970.]

JOHN NOWOJ et al., *Plaintiff*, v. WALTER F. MULALLEY *et al.*, *Respondents and Cross-appellants*, C. D. McCARGAR, *Appellant.*

A. M. FLERCHINGER, *Plaintiff*, v. WALTER F. MULALLEY *et al.*, *Respondents and Cross-appellants*, C. D. McCARGAR, *Appellant.*

CASH'S PLUMBING AND HEATING, INC., *Plaintiff*, v. GEORGE JAMIESON, *Defendant*, WALTER F. MULALLEY *et al.*, *Respondents and Cross-appellants*, C. D. McCARGAR, *Appellant.*

*Irwin, Friel & Myklebust* and *Jon C. McConnell,* for appellant.

*Erickson & Worthington, Harvey Erickson,* and *Henry Felton,* for respondents and cross-appellants.

MUNSON, J.—This is an action by mechanic's lien holders to enforce their claims against the property of defendants Walter and Georgia Mulalley, hereafter called buyers. C. D. McCargar, hereafter called broker, was brought in by buyers as a third-party defendant. Plaintiffs' lien claims were foreclosed and no appeal was taken. Judgment was then entered against broker for the full amount. Broker appeals. Buyers cross-appeal from the trial court's allowing broker's retention of $900 commission on sale.

In the spring of 1965, buyers approached broker's real estate agency and were shown several houses, none of which were satisfactory. After being shown a vacant lot and some houses built by George Jamieson, hereafter referred to as builder, buyers agreed to purchase a house to be built by builder on the vacant lot they were previously shown.

Broker prepared the earnest money receipt and agreement whereby buyers agreed to purchase the house for $17,990. Subsequently, arrangements were made to implement the agreement as follows: (1) builder was to purchase the vacant lot in his name with funds advanced by buyers; (2) builder was to execute, in buyers' favor, a mortgage to secure the funds used in the construction; and

(3) broker was to serve as a middleman for the transfer of progress payments from buyers to builder. The mechanics of this last step were simple. Builder would advise broker as money was needed. This need was then communicated to buyers who in turn would give broker the amount requested for transmittal to builder. On occasion, however, builder would contact buyers directly, whereupon he would be given a check payable to broker as trustee. Broker would then take the check and give builder one drawn on his trust account. Buyers knew the money was being paid by broker directly to builder as needed. Furthermore, it was broker's understanding the funds received could only be paid to builder.

When the house was completed, there being no issue raised as to its quality of value, broker, with the knowledge and apparent consent of buyers, paid builder the final amount due and buyers released their mortgage. In addition, buyers paid builder directly for extras they added during construction in the amount of $1,329.14. Buyers further paid $750 over and above the contract price to broker with specific instructions to pay that amount to builder for extras they had added. The necessary instruments conveying title were delivered by broker to buyers without any investigation to determine if all subcontractors, materialmen and laborers had been paid. Subsequently, lien claims totaling $4,804.56 were perfected.

At the time of trial, buyers claimed broker, when speaking of his duty as middleman, said he would see that the bills were paid. This statement, coupled with broker's testimony that he had sold buyers a completed house, ostensibly serves as the basis for the trial court's findings of fact No. 5 and No. 6 as follows:

## V.

That the said third party defendant, C. D. McCargar, owed the responsibility by contract to deliver to the Mulalleys a completed house. That the completed house was intended to be a house free of liens and encumbrances, and that the sole responsibility for determining whether

or not liens or encumbrances and debts which may become liens and encumbrances existed was the responsibility of C. D. McCargar.

### VI.

That the said C. D. McCargar was a trustee of the funds entrusted to him in the sum of $17,990.00 by the said defendants Walter F. Mulalley and Georgia E. Mulalley, husband and wife, and the failure to disburse these funds properly was due to his negligence.

■ Accepting the trial court's position that the earnest money agreement, together with its subsequent oral amplification, determines the relations of the parties, phrases like "completed house" and "pay the bills" still remain undefined and ambiguous. In the construction of ambiguous contracts the conduct of the parties will be given great weight in determining its proper interpretation. *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.,* 13 Wn.2d 370, 125 P.2d 668 (1942); *Tone v. Parlaman,* 154 Wash. 389, 282 P. 208 (1929). In the instant case, it is clear broker was merely a conduit through which buyers' money passed to builder. The record also shows there was no inquiry by buyers as to whether the subcontractors, materialmen or laborers were paid, nor is there any indication buyers expected broker to determine if they had been paid. The only ones involved in any exchange or inquiry concerning money were buyers, builder and broker; furthermore, the above payment scheme was suggested to buyers by another realtor for the sole purpose of assuring that builder would not abscond with the money without completing the house. Therefore, the conduct of the parties patently illustrates the intent of buyers that broker "pay the bills" meant pay the construction funds directly to builder.

The fact that broker upon receipt of buyers' money placed it in his trust account and also requested buyers to make their checks payable to him as trustee is merely an act which shows broker accountable for the disposition of the funds. However, he is still only entitled to dispose of those funds as authorized by buyers. As a result, the record

is devoid of any evidence which supports the trial court's finding that the term "completed house" was intended to be a house free of liens and encumbrances.

The earnest money receipt and agreement to purchase specifically states broker is not responsible for title to the property. Also, a subsequent title insurance policy obtained by buyers excepted mechanic's and materialman's liens. No inquiry was made by buyers concerning the meaning of these terms, nor did buyers seek legal counsel as suggested in the receipt and agreement to purchase.

It is not the function of the courts to rewrite or make contracts between parties, nor is it to impose an obligation upon one party that he did not assume. *Collins v. Northwest Cas. Co.,* 180 Wash. 347, 39 P.2d 986, 97 A.L.R. 1235 (1935); *Chaffee v. Chaffee,* 19 Wn.2d 607, 145 P.2d 244 (1943).

It is evident from the record: (1) the parties gave no consideration to the matter of liens until after the house was completed, paid for and the liens subsequently perfected; (2) this suit between buyers and broker is the result of buyers' inability to proceed against builder; and (3) buyers' cross-appeal is without merit.

There being no substantial evidence to support the findings of the trial court, judgment is reversed with instructions to dismiss defendant's third-party complaint.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied March 13, 1970.