[No. 47–40423–3.    Division Three.    May 6, 1970.]

IRVING H. BENNION, *Respondent,* v. PRONTO FOODS, INC., *Appellant.*

*Charles T. Schillberg,* for appellant.

*Darrell E. Ries* (of *Ries & Kenison*), for respondent.

MUNSON, J.—Defendant, Pronto Foods, Inc., appeals from an order permanently enjoining it from discharging or stor-

ing waste or effluent from its potato processing plant upon a parcel of land contiguous to plaintiff.

In 1964, parcel 2[1] was sold on a real estate contract to the Hattori brothers. Parcel 1 remained in plaintiff's trustee ownership. Thereafter the Hattori brothers leased a portion of parcel 2 to defendant for use as a settling pond and waste reservoir. The Hattori brothers also allowed defendant to sprinkle liquid waste upon portions of their land that would on occasion run upon plaintiff's land. Plaintiff, believing the maintenance of this pond of noxious fluid and the sprinkling of same upon parcel 2 potentially depreciated its value (and inferentially his reversionary interest), threatened to declare the real estate contract in default since: (1) he deemed such action to constitute waste; and (2) the lease to defendant was contrary to the provisions of the real estate contract.

In response to plaintiff's threatened action, the Hattori brothers brought a declaratory judgment action against plaintiff to determine whether they were in default. Defendant intervened in that action. On March 7, 1967, pursuant to stipulation wherein plaintiff agreed to accept the full balance due under the real estate contract, the Hattori brothers dismissed their action.

Between the time the Hattori brothers had brought their action and its subsequent dismissal, plaintiff had brought a separate action against defendant and the Hattori brothers seeking: (1) to enjoin them from disposing or storing sewage or effluent or allowing disposal or storage of same on either parcel of section 21; and (2) to recover damages. On March 8, 1967, defendant, in order to obtain a dismissal of this action, executed the following settlement agreement:

Gentlemen:

Re: Bennion vs Pronto Foods, Inc. et al
    Grant County Case No. 17443

This letter is being written to you in your capacity as attorneys for Irving H. Bennion, the Plaintiff in the above entitled action, and in order to settle controversies which have arisen over the use by Pronto Foods, Inc. of lands described in the Complaint filed in this action, for the disposal of industrial waters and affluent [sic].

In consideration of your client's agreement to dismiss the above action, Pronto Foods, Inc. agrees that it will cease and desist from disposing of or placing any waters or other materials of any nature upon or over any of the properties described in the Complaint filed in the above entitled matter, from and after June 1, 1967.

We further agree that we will contain any water or other material placed on the lands described as Parcel II of the Complaint in such a manner that such water or other material will not flood or run upon any part of the lands described as Parcel I in the Complaint, except in the established drainway as it crosses and runs along Parcel I.

In the event your client is required to bring an action arising out of this agreement, he shall be entitled to recover his costs and attorney fees if he prevails in such action.

Very truly yours,

PRONTO FOODS, INC.

/s/ Harry Masto

HARRY MASTO
        Vice-President

In fulfillment of the settlement agreement, an order of dismissal of this action was entered on March 10, 1967.

Defendant continued to discharge waste upon parcel 2 by

sprinklers and to use the storage pond past the June 1st deadline. As a result, the present action was commenced. Judgment was entered in plaintiff's favor for $200 damages and a permanent injunction forbidding defendant, its agents or contractors, from using the pond within parcel 2 for the storage or disposal of waste materials.

First, defendant contends that paragraphs 2 and 3 of the above agreement are ambiguous and contradictory since paragraph 2 forbids the accumulation or disposal of waste waters or other materials over both parcels 1 and 2 of section 21, while paragraph 3 forbids the defendant from discharging water from parcel 2 onto parcel 1. In other words, paragraph 3 implicitly allows waste products upon parcel 2 so long as they do not run onto parcel 1 while, on the other hand, paragraph 2 forbids their accumulation anywhere on parcel 2. This alleged contradiction is resolved upon examination of the record in light of the trial court's oral decision. The March 8, 1967 agreement was made at a time when the parties believed the processing plant's period of operation would continue only through June 1, 1967, thus explaining why defendant would not be allowed to store or discharge waste products upon parcel 2 after June 1st. Paragraph 3 covers only the period between the execution of the agreement and June 1, 1967, inclusive. In other words, while defendant is allowed to store, dispose or sprinkle waste or effluent upon parcel 2 prior to June 1st, the agreement requires defendant to take steps to assure that the waste products will not be allowed to drain from parcel 2 onto parcel 1. After June 1, 1967, defendant is required to cease placing any waters or materials of any kind on parcel 2.

Defendant also claims the settlement agreement was not applicable to the pond on parcel 2 because it was not specifically mentioned. Such contention is without merit since the only portion of parcel 2 wherein defendant stores its waste products was the 9-acre pond in dispute in plaintiff's original action and in this one. But for the pond and the resultant effects, there would not have been any basis for

complaint or an agreement such as contained in defendant's letter of March 8, 1967. After examining the entire settlement agreement set forth herein, we find no ambiguity. *Grant County Const'rs. v. E. V. Lane Corp.*, 77 W.D.2d 107, 117-118, 459 P.2d 947 (1969).

Secondly, defendant contends the remedy of specific enforcement of the settlement agreement is improper because: (1) the agreement is too ambiguous to support specific performance; (2) plaintiff has an adequate remedy at law for damages; and (3) specific enforcement of the settlement agreement is extremely unjust since (a) there is no reasonable probability of irreparable harm to plaintiff, (b) to devise a means to avoid use of the storage pond would impose an undue financial burden upon defendant, (c) close and continuous supervision by the trial court would be required for an indefinite period of time, and (d) refusing to allow defendant to use the pond would endanger the public, since it would not be available as an emergency reservoir for the processing plant's waste products in the event of a breakdown of the plant's sewage facilities, thereby requiring defendant to empty its sewage into the Moses Lake sewage system.

The first contention hereunder is without merit in view of our preceding comments that the agreement is not ambiguous.

As to (2) above, defendant, of its own volition, agreed to cease and desist in the storage and disposal of waste products or effluent upon parcel 2, effective after June 1, 1967. To allow defendant to renege on its agreement in favor of money damages would be to rewrite the terms of the agreement. This we cannot do. *Nowoj v. Mulalley*, 1 Wn. App. 939, 465 P.2d 194 (1970); *Grant County Const'rs. v. E. V. Lane Corp., supra.*

As to (3) above, plaintiff prejudicially changed his position as a result of defendant's promise to cease and desist, *i.e.*, forfeited his right to prosecute the then pending action, seeking to prohibit defendant's actions as early as March 8, 1967. To disallow equitable relief to plaintiff would be to

release defendant and cancel a valid agreement. This we will not do. Further, defendant has not shown any distinction in the amount of supervision required for the enforcement of this injunction as opposed to a normal cease and desist order entered by a superior court. Defendant's contentions of undue financial burden and potential danger to the public were well known to defendant at the time it entered into the agreement. They were also presented to the trial court and we find substantial evidence to support the trial court's findings that they are without merit. *Mathewson v. Primeau,* 64 Wn.2d 929, 395 P.2d 183 (1964) is distinguishable in that there was no definite agreement given in settlement of a legitimate claim in that case, whereas we find the contrary to be true here.

The third and final issue raised by defendant is whether the running of the injunction against defendant's agents or contractors is improper, they not having been included in the initial settlement agreement. A court's order is no broader in terms than allowed by CR 65(d). To hold that this order cannot bind defendant's agents or contractors would allow defendant to do, through those parties, that which itself was forbidden to do. The obvious intent of the order is to forbid the defendant from entering into any agreement with a third party to use the open pond for the purposes as set forth in the complaint. The order of the trial court is limited to the use of the 9-acre uncovered pond on parcel 2; it does not apply to enclosed storage tanks, surge tanks, pumping stations, or the like.

■  Specific performance of a settlement agreement is available provided such enforcement is practicable within the confines of equity. *Buob v. Feenaughty Mach. Co.,* 191 Wash. 477, 485, 71 P.2d 559 (1937); 48 A.L.R.2d 1211 (1956). We find such a remedy is practicable in this case.

Judgment is affirmed.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied June 8, 1970.