IRVING INVESTMENT CORPORATION, A CORPORATION OF NEW JERSEY, AND NEWARK HARDWARE & PLUMBING SUPPLY COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. DAVID GORDON AND IRVING GORDON, DEFENDANTS-RESPONDENTS.

Argued November 7, 1949—Decided December 5, 1949.

*Mr. Milton M. Unger* argued the cause for appellants (*Messrs. Milton M.* and *Adrian M. Unger,* attorneys).

*Mr. Meyer E. Ruback* argued the cause for respondents (*Messrs. Ruback & Albach,* attorneys).

The opinion of the court was delivered by

CASE, J.   The primary question is whether a corporate lessor may lawfully burden a lessee with a covenant in restraint of trade when the covenant is effective against property not involved in the lease and is made for the benefit of another corporation with which the lessor has no privity and in which it has no interest.

Irving Investment Corporation, one of the plaintiffs, owned a property located at the southwest corner of Mulberry Street and Edison Place, known as 147 Mulberry Street, in the City of Newark.   Defendants, David Gordon and Irving Gordon, were, and had been since October 31, 1947, owners of the property at the northwest corner, known as 145 Mulberry Street, and for sixteen years and more had, as partners, there engaged in business as electrical contractors and in selling electrical motors, tools and equipment.   Plaintiff, Newark Hardware & Plumbing Supply Company, a corporation, rented a property on the opposite side of Mulberry Street, numbered 148, from David Meyers and wife and had there conducted, for many years, a business which included the sale of radios, heaters and stoves.   The stock in both plaintiff corporations was closely held by David Meyers and the members of his family.   The two corporations had no interest in each other. The sole point of contact, if it may be so-called, was that holders of shares in one were also holders of shares in the other.

On September 1, 1946, the defendants, uncertain of their tenure at 145 Mulberry Street, and with the purpose of transferring their business to the new location, entered into a five year lease, with option to purchase at the end of the term,

with Irving Investment Corporation for the premises at number 147. The lease contained these covenants:

"Thirtieth: It is the general intention of the parties hereto that the tenants are to have the right to use the demised premises for the business now conducted by them at No. 145 Mullberry Street, Newark, N. J. and are not to enter into competition with the business of the Newark Hardware & Plumbing Supply Co. at 148 Mullberry Street, Newark, N. J., and whereas the lessees are now dealing with a few items which are also carried by the said Newark Hardware & Plumbing Supply Co., and for the purpose of avoiding misunderstanding, it is agreed that lessees may sell the items set forth in Schedule 'A' annexed hereto."

"Thirty-First: Lessees covenant and agree not to engage in same or similar line of business as the said Newark Hardware and Plumbing Supply Co., except as hereinto set forth, within a radius of one-eighth of a mile from demised premises, nor place signs advertising such a business within said area, so long as Newark Hardware & Plumbing Supply Co. shall continue in said business at 148-50 Mulberry St., Newark, N. J., either directly or indirectly, as principals, agents, servants or otherwise."

However, the necessity for the contemplated change of location never arose. Defendants bought their old store premises and continued the business there. They sublet the newly demised premises for the same uses as theretofore, namely, the first floor as a saloon and the upper floors as lodgings.

Plaintiffs, the one as covenantee and the other as the person for whose benefit the restrictive covenants were imposed, filed their joint complaint in the Superior Court, Chancery Division, setting up the covenants, alleging that defendants, at their number 145, were selling and advertising articles of merchandise in violation thereof, and seeking an injunction and damages. Affidavits were submitted by both sides and on them and the bill defendants moved for summary judgment. The court, relying upon controverted evidence, found that the restrictive covenants were invalid and unenforceable with respect to any area or place outside the confines of the demised premises and granted summary judgment to the defendants. Plaintiffs appeal from that much of the judgment. The finding with respect to the validity of the cove-

nants against 147 Mulberry Street is not under appeal, and we do not pass upon it.

As a general rule, an agreement in unreasonable restraint of trade is illegal and void, but an agreement in reasonable restraint of trade is valid. That statement hardly needs citation of authorities. The difficulty arises in the application of the broad principle to the facts of a given case. A slight narrowing of the rule was stated by Vice-Chancellor Backes in *Stevens & Thompson Paper Co. v. Brady,* 106 *N. J. Eq.* 410 (*Ch.* 1930), as follows: "Contracts in general restraint of trade are condemned in law as against public policy. Partial restraints that serve to promote and protect trade are countenanced but guardedly enforced." We are not so much concerned with limitations as to time or space as we are with the interest that is to be served by the restraint; and a more pertinent expression in that respect is the quotation approved in *Voices, Inc., v. Metal Tone Mfg. Co., Inc.,* 119 *N. J. Eq.* 324, 330 (*Ch.* 1936); affirmed, 120 *N. J. Eq.* 618 (*E. & A.* 1936); *certiorari* denied, 300 *U. S.* 656, 57 *S. Ct.* 433, 81 *L. Ed.* 866: "A restraint to be reasonable must be such only as to afford a fair protection to the interests of the party in favor of whom it is given and not so large as to interfere with the interests of the public." To same effect, *Scherman v. Stern,* 93 *N. J. Eq.* 626, 630 (*E. & A.* 1922); *Taylor Iron & Steel Co. v. Nichols,* 73 *N. J. Eq.* 684, 686 (*E. & A.* 1907).

If, and we conceive this to be the law, a restraint of trade, to be valid, must be reasonable, and to be reasonable must be such only as to afford a fair protection to the interests of the party in favor of whom it is given, then, unless one not a party to the contract or not privy thereto is permitted to be the only person favored, the above covenants are invalid, because the covenantee has no interest that is served by them. That the words "a fair protection to the interests of the party in favor of whom it is given" have relation to a party to the contract is clear from a more particular choice of language in some of the cases as *e. g. Brewer v. Marshall and Cheeseman,* 19 *N. J. Eq.* 537 (*E. & A.* 1868), "no such agreement

can be reasonable in which the restraint imposed on the *one party* is larger than is necessary for the protection of *the other;*" so, too, *Mandeville v. Harman,* 42 *N. J. Eq.* 185, 191 (*Ch.* 1886); *Marvel v. Jonah,* 81 *N. J. Eq.* 369, 374 (*Ch.* 1913), reversed on other grounds, 83 *N. J. Eq.* 295 (*E. & A.* 1914). Irving Investment Corporation is merely the owner of land which is not benefited by the restraint. It is neither a merchant nor a manufacturer; it has no interest in the goods or in the places where the goods are sold, or in the profits or losses entailed in the merchandising of them. The property which it owns is not the *locus* of any business affected by the covenants and has no present prospect of being so. The restraints have no reasonable relation to the rents or the reversion. *Fishman v. Fishman,* 137 *N. J. Eq.* 151 (*Ch.* 1945); affirmed, *Id.* 454 (*E. & A.* 1945), is cited by appellants but gives no support to their position. There a wife brought a suit against her former husband and a corporation which, by inference, was owned entirely or largely by the husband; the wife sought an adjudication that the corporate defendant had no rights, and could have no rights, against the complainant by virtue of certain restrictive covenants made by the complainant in a contract with her husband. The court was of the opinion that the wife had omitted from the bill of complaint, with sinister intent, any mention of the husband's ownership of corporate shares and ordered her to make a fuller and more particular statement. In so doing the court said (*p.* 154): "It may well be that in the absence of a property relationship between Fishman individually and Fishman's, Inc., complainant's restrictive covenants would not be enforceable in behalf of the corporate defendant." There was thus made, as a concession in the opinion, a statement of law which, applied here, is fatal to appellants' contention. In the instant case the covenantee was not an individual who sought to benefit a corporation in which he held stock and thus to subserve his own interest, but a corporation without the remotest interest in the out-working of the covenants.

It is argued that the two corporations are but instrumentalities which Meyers and his associates set up to serve their personal interests. That argument defeats itself. Meyers operates through corporate structures in order that he may have the resulting advantages, one of which is the freedom of separate personal assets from corporate liabilities. The disadvantages go with the advantages. The corporate form is recognized by equity as well as by law, and a court of equity is bound by the laws governing the conduct of the corporate action. *Jackson v. Hooper,* 76 *N. J. Eq.* 592 (*E. & A.* 1909). It is where the corporate form is used as a shield behind which injustice is sought to be done by those who have the control of it that equity penetrates the veil. *Cf. Telis v. Telis,* 132 *N. J. Eq.* 25, 30 (*E. & A.* 1942); *Murtland Holding Co. v. Egg Harbor Commercial Bank,* 123 *N. J. Eq.* 117, 122 (*Ch.* 1938).

Not only has the Irving Investment Corporation no interest in the Newark Hardware & Plumbing Company or any of its doings; the Newark Hardware & Plumbing Company has no interest in the Irving Investment Corporation.

The Meyers property, occupied by Newark Hardware & Plumbing Company, is on Mulberry Street, the second property from the southeast corner of Edison Place. It is on the opposite side of Mulberry Street from both 145 and 147 Mulberry Street, removed by the width of the adjoining corner lot and of Edison Place and more from 145, but almost directly opposite No. 147; in fact a part of No. 148 is directly opposite a part of No. 147. It is fairly clear that the main objective of the covenants was to prevent close competition with No. 148 by No. 147; indeed Meyers, president of Irving Investment Corporation, president of Newark Hardware & Plumbing Company, and owner, with his wife, of the Newark Hardware & Plumbing Company property, said under examination that he would not have granted the option to purchase No. 147 if it hadn't been for the covenants, adding: "I don't want any competitor right on top of me." The radius of one-eighth of a mile from No. 147, mentioned in the covenants as the effective area, relates to and includes

the demised premises, *Cf. Fleckenstein Bros. Co. v. Flecken-stein*, 76 *N. J. L.* 613 (*E. & A.* 1908) ; and the covenants were inserted in anticipation not only of the use of No. 147 by the defendants under its lease for business that would be competitive with No. 148, but of the possible exercise by the defendants of their option to purchase.   The unwillingness to sell, or even to lease, a property subject to such possibilities of harmful competition is understandable;   and it may be supposed with reasonable assurance that the several restraints were imposed and accepted with respect only to the property which was the subject matter of the lease, and that the continued use of No. 145 by the defendants was not then in the mind of anyone.

But however that may be, we find that under the circumstances of the case, disclosed by uncontroverted proofs, Irving Investment Corporation could not lawfully impose the named restrictions against 145 Mulberry Street, and that to the extent that the covenants, because of their broad language, are applicable to that property they are in unreasonable restraint of trade, invalid and, therefore, unenforceable.   As was well said by Judge Stein below in the analysis of the opinion in *United States v. Addyston Pipe & Steel Co.,* 85 *Fed. Rep.* 271 (*C. C. A. 6th* 1898) ; affirmed, 175 *U. S.* 211, 44 *L. Ed.* 136 (1899), a restrictive covenant, to be enforceable, must be ancillary to a larger, lawful transaction, in the sense that it is reasonably and necessarily related to the main purpose of that transaction.   That principle runs through our cases.   *Cf. Schultz v. Johnson,* 110 *N. J. Eq.* 566 (*E. & A.* 1932) ; *Glantz v. Willow Supply Co.,* 139 *N. J. Eq.* 523 (*Ch.* 1947) ; *Pilgrim Coal, Apron & Linen Service, Inc., v. Krzywulak,* 141 *N. J. Eq.* 212 (*Ch.* 1948).   To that statement of the rule was added, both by the writer of the opinion below and by the decision which he was reviewing, the further essential that the covenant is necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract or to protect him from the dangers of an unjust use of those fruits by the other party.   And with this amplification we are in accord.   *Cf. Palumbo v. Piccioni,* 89 *N. J. Eq.*

40 (*Ch.* 1918); *Bond Electric Corporation v. Keller,* 113 *N. J. Eq.* 195 (*Ch.* 1933).

Conceding that there are instances where a person, for whose benefit a contract is made, may, although not a party to the contract and not a contributor to the consideration, sue thereon, we further find that since the contract is not, as to the covenants in application to No. 145, valid between the immediate parties, it may not form a basis for relief in those respects at the suit of the designated beneficiary. Appellants cite, as *contra* that finding, *Lister v. Vogel,* 110 *N. J. Eq.* 35 (*E. & A.* 1931); *Oscenda v. Oscenda,* 2 *N. J. Super.* 353 (*Super. Ct.* 1949), and *Ferris v. American Brewing Co.,* 155 *Ind.* 539, 58 *N. E.* 701 (*Sup. Ct., Ind.,* 1900). None of those decisions carry the significance imputed to them. In *Lister v. Vogel* the point passed upon was the right of a landowner to enforce valid building restrictions held to have been imposed upon adjoining lands for his benefit. In the *Oscenda case* Oscenda contracted to purchase lands, title to go to him and his wife, Helen; before the contract was performed Oscenda died intestate; against the contention of the decedent's daughters the court held that the contract was valid and was made for the benefit of the wife who was, therefore, entitled to receive title. *Ferris v. American Brewing Company* involved a covenant by a lessee not to sell any beer *on the leased premises* except that made by a named company; the covenant was held enforceable by the brewing company for whose benefit the provision was inserted although the company was not a party to the lease. The foregoing brief references disclose the impertinency of those cases. Appellants cite no decision here or elsewhere which holds either that a corporation without any interest of its own or of the public to be served thereby may lawfully impose a covenant in restraint of trade, or that ownership by the same individuals of shares of stock in two disconnected corporations forms, of itself, such a community of interest as that a covenant in restraint of trade made by one of those corporations, unreasonable as to it, becomes enforceable because of some unique interest lodged in the other.

For the reasons stated above we conclude that the judgment under appeal should be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.