THE VENDO COMPANY, Plaintiff-Appellee, *v.* HARRY B. STONER *et al.,*
Defendants-Appellants.

(No. 71-396; 

Second District—May 29, 1973.

*Rehearing denied September 12, 1973.*

Barnabas F. Sears, of Boodell, Sears, Sugrue & Crowley, and James
E. S. Baker, of Sidley & Austin, and William Thomas Braithwaite all of
Chicago, and Gerald M. Sheridan, Jr., of Wheaton, for appellants.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, and Hillix Brewer & Meyers, of Kansas City, Missouri, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Plaintiff ("Vendo") brought this action in August 1965 in the circuit court of Kane County to recover damages for defendants' breach of non-competition covenants. By amendments to the complaint filed a few months later, Vendo alleged theft by defendants of valuable trade secrets and appropriation of them to their own use and to that of Lektro-Vend Corporation. Following a bench trial the court entered judgment against both defendants, Harry Stoner ("Stoner") and Stoner Investments, Inc. ("Stoner Investments") for $1,100,000 and costs and against Stoner for $250,000. (An injunction was also entered which is not now an issue.) On appeal, after holding that Vendo had no trade secret and was therefore not entitled to any damages for its theft, we affirmed in part, reversed in part, and remanded the case to the trial court with directions to determine damages for breach of the covenants not to compete consistent wtih the views expressed in our opinion. *Vendo Co. v. Stoner*, 105 Ill.App.2d 261.

At the conclusion of the trial on remand the court entered judgment against both defendants for $7,345,500 and costs and against Stoner, individually, for $170,835 and costs.

Our opinion on the prior appeal presents the relevant facts and sets forth the pertinent non-competition provisions of the sales agreement and the employment contract. (*Vendo Co. v. Stoner*, 105 Ill.App.2d at 267-268.) Therefore they need not be restated here. However, we will advert in this opinion to evidence adduced at the trial on remand.

The principal question presented is whether the judgment against both defendants for $7,345,500 is contrary to the law of the case established by the prior appeal, and whether it is outside of the issues framed by the complaint.

It would unduly prolong this opinion to set forth in detail the evidence as to damages received by the court (over defendants' objections).[1] We will confine ourselves to summarizing the evidence when necessary. Perhaps the nature of Vendo's evidence as to damages on remand can be succinctly indicated by Vendo's counsel's own words in his opening statement as being: (a) "What Vendo lost by way of sales by not having this (Lektro-Vend) machine, if that resulted from the conduct of Mr. Stoner," and (b) "the depreciation—or the diminution of the value of

---

[1] The record in this case is voluminous; the abstract of the record alone of the trial on remand consists of 598 pages; the book of exhibits on re-trial is about 2" thick.

the company as of 1969 as a result of Mr. Stoner's activity and the failure to have the Lektro-Vend machine if that resulted from Mr. Stoner's activity."

In its complaint Vendo pleaded two theories of liability: (a) theft of a trade secret, and (b) breach of the covenants not to compete by directly or indirectly entering into the vending machine business through Lektro-Vend. In the first appeal we held that Vendo had no trade secret, and that the judgment which was predicated upon the theory of its theft was erroneous. However, we held that the non-competition covenants were valid and that they were breached by defendants, stating: "We are thus limited to ascertaining the proper measure of damages for breach of the covenants not to compete." (*Vendo Co. v. Stoner*, 105 Ill. App.2d at 288.) We further stated at page 291: "[T]he value of the Lektro-Vend machine, [upon which the earlier judgment of $1,100,000 was based] * * * is neither an element nor a yardstick of damages for a breach of the noncompetition covenants," and held instead that "Vendo should be permitted to recover an amount equal to the net profits it lost and might reasonably be expected to lose, plus the amount by which the value of its business will have been diminished as of June 1, 1969, because of defendants' wrongful competition."

At the trial on remand Vendo made no attempt to prove lost profits caused by defendants' "wrongful competition". Instead, it relied principally on the testimony of two experts, both of whom acknowledged that their theory for the computation of damages was loss of sales from the absence of a FIFO [2] machine and that Stoner was responsible for Vendo's lack of such machine. These experts relied substantially on a report made by Vendo's manager of business research making estimates of percentage of the confection vendor market taken over by FIFO vendors as distinguished from the older drop-shelf type. This very report warned that it did not include a sufficient number of operators to make a determination, and that therefore "inferences concerning competitive positions within the total market should be avoided." The figures of both experts on lost profits and on diminution of the value of the business were premised on Vendo's failure to have FIFO, and on Stoner's responsibility for such failure.

Neither the evidence in the first trial nor in the trial on remand establishes that Stoner was responsible for Vendo's failure to have FIFO. Our prior opinion describes Vendo's unsuccessful efforts to build a FIFO in 1959-60 (*Vendo Co. v. Stoner*, 105 Ill.App.2d at 271-273), and, at page

---

[2] FIFO equals "first-in-first-out", *i.e.*, a machine where the first product stocked would be the first one sold.

274, Stoner's recommendation in March 1963 for Vendo's purchase of Lektro-Vend's FIFO machine. When Stoner's recommendation was rejected, he told Vendo that the future will show that Vendo's failure to acquire it was "a serious mistake". Vendo had decided against developing a FIFO twice before that occasion.

After 1963 Vendo continued to reject the development of a FIFO machine, even after repeated urging by its salesmen. At the time of the trial on remand, April-May, 1971, Vendo was finally almost ready to begin production with a FIFO snack vender. This development resulted as a spin-off from its contract with Lance Company, a large buyer of vending machines on a bid contract basis.

■■ Vendo's failure to have a FIFO vending machine is not attributable to defendants. The computation of damages for a loss of profits during defendants' breach and the diminution in the value of its business was not based on defendants' "wrongful competition" and therefore did not conform to the decision and mandate of this court. (*Vendo Co. v. Stoner*, 105 Ill.App.2d at 291.) On reversal of a judgment and remand by a court of appellate jurisdiction the trial court can take only such proceedings as conform to the judgment of the reviewing court. *People ex rel. Bauer v. Henry*, 10 Ill.2d 324; *Berry v. Lewis*, 27 Ill.2d 61, 62-63; *Fiore v. City of Highland Park*, 93 Ill.App.2d 24, 34.

■■ Lost profits in a non-competition case are those which were diverted from the plaintiff as a result of defendants' sales as plaintiff's competitor (*Long v. O'Bryan*, 28 Ky. L.Rep. 1062, 91 S.W. 659, 660; *Stewart v. Challacombe & Ramsey*, 11 Ill.App. 379, 382), and plaintiff's damages must be such as were sustained by defendant's breach of contract and were a "normal and proximate consequence of the breach * * *." (*Hitchcock v. Anthony*, 83 F. 779, 783.) Although liberality may be used in estimating damages after it has been shown that they were caused by illegal acts, "this liberality does not extend to proof that the damages were caused by the illegal acts." (*Dantzler v. Dictograph Products, Inc.*, 309 F.2d 326, 330, *cert. denied*, 372 U.S. 970.) The fact that Vendo suffered losses subsequent to defendants' breach of the non-competition covenants does not of itself establish a causal connection. The damages recoverable by Vendo are only those which are a normal and proximate consequence of defendants' breach of those covenants.

■■ Diminution in the value of the business is the amount by which the value of the good will of the business has been impaired at the end of the term of the non-competition covenants. (*Bauwens v. Goethals*, 187 Ill.App. 563, 572; see also, *McCook Window Co. v. Hardwood Door Corp.*, 52 Ill.App.2d 278, 287-288.) If upon remand Vendo fails or is unable to prove any lost profits or diminution of business "because of de-

fendants' wrongful competition" it would be entitled to recover only nominal damages. *Maren v. Wolmer*, 343 Ill.App. 353 (abstract opinion); *Scotton v. Wright*, 32 Del. 192, 121 A. 180, 185; *Shaw v. Jones, Newton & Co.*, 133 Ga. 446, 66 S.E. 240, 242.

A further contention of defendants is, in effect, that because of additional facts adduced after remand, the judgment of $170,835 entered against Stoner individually is erroneous. A discussion of defendants' argument will not serve any useful purpose and would only prolong this opinion. We need only state that in entering that judgment the trial court complied with our mandate on the prior appeal as it was bound to do. (*Sawicki v. Clemons*, 411 Ill. 28, 30; *People v. Militzer*, 301 Ill. 284, 287.) Defendants had ample opportunity to introduce at the first trial any pertinent evidence relative to the facts upon which that liability was predicated. They did not do so. There must be an end of litigation somewhere and the judgment of $170,835 is affirmed.

Defendant further argues that the trial court (before the trial on remand) should have allowed defendants' motion to reinstate their Illinois antitrust defenses and counterclaim. In our prior opinion we affirmed the trial court's striking of these affirmative defenses and counterclaim bounded on alleged violation of Illinois antitrust laws. (*Vendo Co. v. Stoner*, 105 Ill.App.2d at 298-299.)[3] Subsequent to this court's prior opinion the Illinois legislature enacted section 7.9 amending the Illinois Antitrust Act, effective July 1, 1969 (Ill. Rev. Stat. 1969, ch. 38, sec. 60—7.9) to provide as follows:

> "No action under this Act shall be barred on the grounds that the activities or conduct complained of in any way affects or involves interstate or foreign commerce."

The Attorney General of Illinois, as *amicus curiae*, supports plaintiff's argument on this point.

■■ Even if it be assumed that the State legislature had the authority to enact this amendatory provision, we are unable to ascribe to it retroactive application to contracts entered into five years earlier. Our affirmance in the prior opinion of the trial court's dismissal of the State antitrust defense and counterclaim became the law of the case on remand. The trial court properly refused to allow reinstatement of the defense and counterclaim based on the amendment of the Illinois Antitrust Act.

In view of our decision we regard it as unnecessary to discuss other contentions of the parties.

---

[3] In that opinion we also held at page 297 that the trial court erred in striking the federal antitrust defenses without a hearing. Before trial on remand defendants by leave of court dismissed that defense without prejudice. *Vendo Co. v. Stoner*, 105 Ill. App.2d 261, 297.

The judgment of the trial court is therefore affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

GUILD, P. J., and T. MORAN, J., concur.