480

[No. 2815-1.    Division One.    December 1, 1975.]

RITA E. DWELLEY, *Individually and as Guardian, Respondent*, v. SUSAN C. CHESTERFIELD, *as Executrix, Appellant.*

*Beresford, Booth, Lehne & McKisson, Robert W. Mc-Kisson,* and *Ronald J. Trompeter,* for appellant.

*Lynch & Lynch* and *Neil J. Lynch,* for respondent.

FARRIS, J.—Rita E. Dwelley and Jack D. Chesterfield, the decedent, were divorced by decree entered February 15, 1962. A property settlement agreement incorporated in the decree

(1) Awarded a $10,000 (face value) Veterans Administration insurance policy on the life of Jack Chesterfield to Rita Chesterfield (now Rita Dwelley) and obligated her to maintain the payment of the premiums thereon;

(2) Awarded Jack Chesterfield a $15,000 (face value) Northern Life Insurance Company policy which he was obligated to maintain for and on behalf of the parties' minor children as beneficiaries "until said minor children reach the age of twenty-one, or are emancipated."

Both parties remarried following the divorce. On January 18, 1969, Chesterfield died in an airplane crash. Thereafter,

an action concerning his obligation to provide insurance coverage on his life was brought against his estate by Dwelley, individually, and as guardian of their two minor children. The trial court entered judgment for Dwelley; the estate appeals.

The dispute regarding the $15,000 policy arose because Chesterfield permitted the policy to expire at the end of the 5-year term for which it had been originally issued. At that time neither child had reached the age of 21 years nor been emancipated. The policy contained two types of conversion options under which coverage could have been continued but Chesterfield did not exercise either of them. The trial court concluded that Chesterfield had breached the terms of the divorce decree by failing to maintain coverage and awarded judgment against the estate for $15,000.

The estate argues that the decree described the policy by name and number, that Chesterfield maintained it until its expiration date which was as long as it was physically possible to do so, and that he was under no affirmative duty to continue coverage. We reject these arguments. The language of the decree is clear and unambiguous. The policy was to be maintained until the children reached the age of 21 or were emancipated. The conversion options were a part of the insurance contract. He failed to exercise either of them. The trial court therefore properly awarded judgment against his estate for the face amount of the policy.

The dispute involving the $10,000 V.A. policy arises from a contract which Dwelley and Chesterfield entered into on March 3, 1964. Under that contract, Chesterfield was obligated to (1) endorse a certain United States treasury warrant over to Dwelley, (2) immediately obtain "a life insurance policy in the face amount of $10,000 insuring [his] life, naming . . . Dwelley, as the sole beneficiary," and (3) pay the premium on that policy until the children of his former marriage to Dwelley reached the age of 21, were emancipated, became self-supporting, or were married. In exchange, Dwelley transferred her interest in the $10,000 V.A. policy to Chesterfield.

The difficulty arose because Chesterfield died in an airplane crash. Unlike the V.A. policy, the replacement policy contained an aircraft exclusion. The finding of fact on the issue is as follows:

On or about March 3, 1964, the plaintiff, RITA E. DWELLEY, formerly RITA CHESTERFIELD, entered into a written contract with JACK D. CHESTERFIELD which contract is on file herein as Exhibit No. 3. The V.A. policy referred to in Exhibit No. 3 contained no exclusions. Subsequent to the execution of said contract the decedent, JACK D. CHESTERFIELD, secured from the United Pacific Insurance Company Policy No. 2224 (Exhibit 4), in the face amount of $10,000.00 which policy insured his life and was in full force and effect on the date of his death. Policy 2224 contained an aircraft exclusion clause and as a result the United Pacific Insurance Company refused payment of the face amount and refunded to the plaintiff the premiums previously paid in the amount of $359.19. Defendant could have insured against the aircraft exclusion by paying an additional premium.

Finding of fact No. 4. The critical question is whether Chesterfield was obligated to replace the V.A. policy with one which also did not contain an aircraft exclusion. The trial court apparently concluded that such an obligation existed and awarded judgment to Dwelley for the face amount of the policy less the $359.19 reimbursement of premiums which she had already received. Nothing in either the contract or finding of fact No. 4 provides a factual basis for such an obligation. The only evidence in the record concerning the agreement between the parties regarding the provisions of the substituted policy is the testimony of Dwelley.

While parol evidence is not admissible unless there is an ambiguity in the contract, *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 121, 459 P.2d 947 (1969), it can be argued that the failure of the contract to specify the terms of the $10,000 policy to be substituted created an ambiguity which would permit the introduction of parol. Even assuming, without deciding, that Dwelley's testimony

regarding the meaning of the contract was admissible, it is not persuasive on the point. Dwelley testified:

Q (By Mr. Lynch) All right, Mrs. Dwelley, did you have any impression with respect to what you were to obtain in exchange valuewise of your VA policy of the one Mr. Chesterfield was to get for you?

A My impression it would be a policy that would pay just exactly like the VA policy. In other words, even at that time he owned his own plane and he flew it and he showed me the policy and I would never have agreed to it if that didn't cover him flying because that was the way he traveled. If I had seen a policy, I certainly wouldn't have agreed to trade policies with them because I was getting a worthless policy when he did most of his own flying. My impression is that the policy would pay just exactly like the VA policy.

Q That is good enough. Now, as stated in here, you did receive a refund of the premiums on the policy but not the principal amount on the face?

A Yes.

Dwelley's uncommunicated "impression" of what the contract meant is of no value to the court in determining the meaning of the March 3 agreement. *See Janzen v. Phillips*, 73 Wn.2d 174, 178, 437 P.2d 189 (1968). *See also Wesco Realty, Inc. v. Drewry*, 9 Wn. App. 734, 735, 515 P.2d 513 (1973). The record fails to support the trial court's conclusion that the contract obligated Chesterfield to substitute a policy which did not contain an aircraft exclusion.

Apparently Dwelley made no inquiry regarding the substituted policy during Chesterfield's lifetime:

Q (By Mr. Lynch) Did you ever see the United Pacific Insurance Company policy subsequently that was issued?

A No.

Q Did you have any knowledge of its terms of the United Pacific Company policy, Mrs. Dwelley?

A No.

While this is unfortunate, we cannot correct this oversight by adding a provision to the written agreement of the parties under the guise of "interpretation." *See Grant County Constructors v. E.V. Lane Corp., supra* at 121.

484

The judgment as to the $15,000 policy is affirmed. The judgment as to the $10,000 policy is reversed.

WILLIAMS, C.J., and JAMES, J., concur.

Petition for rehearing denied March 9, 1976.

Review granted by Supreme Court May 25, 1976.