[No. 4138-7-III.   Division Three.   November 5, 1981.]

EVAN L. ARMSTRONG, *Appellant,* v. TACO TIME INTERNATIONAL, INC., *Respondent.*

*Henry E. Stiles II, Lukins, Annis, Shine, McKay, Van Marter & Rein, Neil E. Humphries,* and *Humphries, Patterson & Lewis,* for appellant.

*Richard D. McWilliams (K. Patrick Neill* and *Hershner, Hunter, Miller, Moulton & Andrews,* of counsel), for respondent.

GREEN, J.—This appeal involves the validity and application of a covenant not to compete contained in a fran-

chise issued by Taco Time International (TTI) to Evan L. Armstrong.

TTI, founded in 1960, is an Oregon corporation which owns and franchises Taco Time Mexican fast–food restaurants. In June 1965, TTI and Mr. Armstrong entered into a franchise agreement. This agreement granted Mr. Armstrong an exclusive franchise to the geographical area within a 50–mile radius of Spokane and contained the following covenant:

> The Second Party [Armstrong] agrees not to compete with the NATACO [now TTI] in the continental United States of America in the sale of Mexican–type food during the term of this franchise and for five (5) years after its termination.

Although TTI prepared the agreement, before Mr. Armstrong signed it his attorney reviewed it. Pursuant to the franchise, Mr. Armstrong, by 1977, developed eight Taco Time restaurants within the franchise area, three of which he subfranchised to others in return for franchise fees and royalties.

In 1976, Mr. Armstrong purchased an existing Taco Time franchise and restaurant in Wenatchee. On May 26, 1977, after the expiration of this franchise, Mr. Armstrong changed the name to Taco Mejico. Shortly thereafter, TTI resold the Wenatchee area to another franchisee who opened a Taco Time restaurant.

Also in 1977, without the consent of TTI, Mr. Armstrong, through OMNI Foods, Inc., a corporation of which Mr. Armstrong is the controlling stockholder and president, constructed and opened a Mexican fast–food restaurant called Taco Mejico within the Spokane franchise area. TTI objected. When Mr. Armstrong refused to convert the Taco Mejico restaurant to Taco Time, TTI gave Mr. Armstrong 10 days within which to change the name or it would sue for breach of the covenant not to compete.

Before the time expired, Mr. Armstrong filed this action on July 18, 1977 to declare the covenant not to compete null and void or, in the alternative, to limit the covenant's

application to an area identical with the franchised area. TTI filed a counterclaim, alleging Mr. Armstrong was in violation of the covenant not to compete and sought a permanent injunction and damages in the amount of $800,000.

Prior to and during trial, Mr. Armstrong changed the names of all his Taco Time restaurants to Taco Mejico. He also commenced an action against his subfranchised Taco Time restaurants who failed to pay him royalties under their franchise agreement. On October 13, 1978, Mr. Armstrong opened a Taco Mejico restaurant in Kennewick, one–half mile from an existing franchised Taco Time restaurant.

Following a bench trial, the court in substance found: (1) neither party seeks termination of the franchise; (2) TTI franchise rights are very valuable; (3) it is undisputed all of Mr. Armstrong's Taco Mejico restaurants are operating in violation of the covenant and Mr. Armstrong admits he took a calculated risk that the covenant would be enforceable; (4) TTI has an interest in enforcing the covenant to protect its ability to sell new franchise rights and to protect existing franchisees from competition by a fellow–franchisee; (5) the covenant is reasonable as written so long as the franchise has not been terminated; (6) the covenant is overbroad in the postterm context; (7) enforcement of the covenant is not unreasonable discrimination under the Franchise Investment Protection Act; and (8) there is no evidence showing enforcement would violate the Sherman Antitrust Act.

Based on these findings, the court concluded: (1) the covenant is enforceable as written so long as the franchise agreement has not been terminated; (2) after termination, the covenant is enforceable to the extent it is reasonable, i.e., for 2½ years within the area of the franchise agreement and within a 25–mile radius of any Taco Time restaurant established prior to commencement of the competitive activity; (3) operation of Taco Mejico restaurants violates the covenant and TTI is entitled to an injunction; (4) Mr. Armstrong has the option of reopening Taco Mejico

restaurants located in the franchise area as Taco Time restaurants pursuant to the terms of the franchise agreement; (5) TTI is entitled to recover lost royalties and franchise fees, with interest, until paid; and (6) Mr. Armstrong is enjoined from conveying to anyone else the name Taco Mejico or the business location where he has operated under that name unless the purchaser and his successors and assigns agree not to use the location for a Mexican fast–food restaurant for 2½ years from (1) the closing of the conveyances, or (2) termination of the franchise agreement, whichever comes first. From the judgment entered upon these conclusions, Mr. Armstrong appeals.

First, Mr. Armstrong contends the court erred in concluding he could not challenge the reasonableness and enforceability of the covenant not to compete during the term of the franchise. He argues this determination frustrates the purpose of the Uniform Declaratory Judgments Act, RCW 7.24, under which his action was commenced, by not declaring his "rights, status, and other legal relations under the franchise agreement." We disagree.

Preliminarily, the court did not find or conclude Mr. Armstrong could not challenge the covenant as long as the franchise had not been terminated. Rather, the court found:

> The covenant not to compete is reasonable as written for so long as the franchise agreement has not been terminated.

and concluded:

> The covenant not to compete contained in Paragraph 9 of the franchise agreement is fully enforceable against Mr. Armstrong as written so long as the franchise agreement has not been terminated.

If Mr. Armstrong were not allowed, as he contends, to challenge this particular term of the franchise while it was still in effect, the court would have dismissed the complaint without a trial or further proceedings. Instead, the court considered the covenant and declared the parties' rights— the precise relief sought in the complaint. The primary

question is whether that declaration is correct.

■■ Mr. Armstrong takes the position the covenant is unreasonable as written and, therefore, should not be enforced.[1] Although the validity and construction of covenants not to compete contained in franchise agreements have not been directly addressed in this state, the rules generally applicable to such covenants in other types of agreements may be used. Annot., *Validity and Construction of Restrictive Covenant Not To Compete Ancillary to Franchise Agreement*, 50 A.L.R.3d 746 (1973). Courts agree a franchise agreement is akin to an employment contract. *Budget Rent–A–Car Corp. of America v. Fein*, 342 F.2d 509 (5th Cir. 1965); *Mansfield v. B. & W. Gas, Inc.*, 222 Ga. 259, 149 S.E.2d 482 (1966); *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 493 P.2d 205, 50 A.L.R.3d 730 (1972). In Washington, covenants not to compete contained in employment contracts are enforced to the extent they are reasonable and lawful, giving special consideration to time and area restrictions. *Sheppard v. Blackstock Lumber Co.*, 85 Wn.2d 929, 933, 540 P.2d 1373 (1975). In such cases, "reasonableness" is a question of law. *Alexander & Alexander, Inc. v. Wohlman*, 19 Wn. App. 670, 684, 578 P.2d 530 (1978). The trial court properly determined the covenant as written is overbroad. However, it does not follow

---

[1]Mr. Armstrong relies on cases from other jurisdictions to support his argument. They are distinguishable:

(a) *Barrett–Walls, Inc. v. T.V. Venture, Inc.*, 242 Ga. 816, 251 S.E.2d 558 (1979); *T.E. McCutcheon Enterprises, Inc. v. Snelling & Snelling, Inc.*, 232 Ga. 609, 212 S.E.2d 319 (1974); *Richard P. Rita Personnel Servs. Int'l, Inc. v. Kot*, 229 Ga. 314, 191 S.E.2d 79 (1972); *Ellison v. Labor Pool of America, Inc.*, 228 Ga. 147, 184 S.E.2d 572 (1971); and *Cheese Shop Int'l, Inc. v. Wirth*, 304 F. Supp. 861 (N.D. Ga. 1969), are all cases applying Georgia law. Georgia follows the minority rule regarding restrictive covenants—if the covenant is overly broad as to time and area, it is null and void and will not be enforced.

(b) *Central Specialties Co. v. Schaefer*, 318 F. Supp. 855 (N.D. Ill. 1970); *Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972); *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 493 P.2d 205, 50 A.L.R.3d 730 (1972); and *Pancake Realty Co. v. Harber*, 137 W. Va. 605, 73 S.E.2d 438 (1952), are all distinguishable on the ground the restrictive covenants in those cases contained no geographical limitation.

the covenant must fail because it is unreasonable as to time and area. *Wood v. May,* 73 Wn.2d 307, 312, 438 P.2d 587 (1968). In this state, our courts will enforce a restriction to the extent it is reasonable. Under this rule, a court may modify the covenant even though the offending portion is grammatically indivisible from the remainder of the covenant. *Wood v. May, supra* at 312–13; *Sheppard v. Blackstock Lumber Co., supra* at 934.

▇ Here, the court modified the covenant as to its post-term application reducing both the time and area restrictions but declined to modify the covenant during its term, relying upon two Illinois cases: *McDonald's Sys., Inc. v. Sandy's Inc.,* 45 Ill. App. 2d 57, 195 N.E.2d 22 (1963); and *Vendo Co. v. Stoner,* 105 Ill. App. 2d 261, 245 N.E.2d 263 (1969), *appeal from remand,* 13 Ill. App. 3d 291, 300 N.E.2d 632 (1973). Illinois is the only state which has held a covenant cannot be challenged so long as the franchise has not been terminated. Generally, the courts examine the covenant and enforce it to the extent it is determined to be reasonable without regard to whether the basic agreement has terminated. *Unishops, Inc. v. May's Family Centers, Inc.,* ___ Ind. App. ___, 399 N.E.2d 760 (1980); *Winrock Enterprises, Inc. v. House of Fabrics of N. M., Inc.,* 91 N.M. 661, 579 P.2d 787 (1978); *John Roane, Inc. v. Tweed,* 33 Del. Ch. 4, 89 A.2d 548, 41 A.L.R.2d 1 (1952); *Irving Inv. Corp. v. Gordon,* 3 N.J. 217, 69 A.2d 725 (1949); *Fullerton Lumber Co. v. Torborg,* 270 Wis. 133, 70 N.W.2d 585 (1955); *Insurance Center, Inc. v. Taylor,* 94 Idaho 896, 499 P.2d 1252 (1972). We are not inclined to follow the Illinois rule. To do so could result in the enforcement of unreasonable covenants. Thus, the court erred to the extent it determined that the covenant would be enforced as written during the term of the Taco Time franchise. Consequently, the words "during the term of the franchise agreement" should be added to the covenant determined to be reasonable by the trial court.

The covenant should be modified in one other respect. The court prohibited competition within a 25–mile radius

from any Taco Time restaurant existing at the time Mr. Armstrong commences such competitive activity. This could allow Mr. Armstrong to compete within another Taco Time franchised area and surrounding buffer zone,[2] if any. We do not believe this was intended by the trial court. The intent was to protect the other Taco Time franchisees from competition within their respective areas by their peers. Such intent cannot be carried out by expressing the prohibition in terms of miles. This accords with the parties' position that it is impossible to define a uniform area or radius of protection expressed in terms of miles which would be reasonable to all franchisees. Therefore, the prohibition pronounced by the trial court should be modified accordingly.[3]

Considering these two modifications, the covenant found reasonable by the trial court is modified to read:

> During the term of the franchise agreement, and for a period of two and one–half years after termination, Mr. Armstrong shall not operate any fast–food Mexican–style restaurant within the area of the franchise agreement, nor within the area covered by any other TTI franchise agreement, including exclusively–protected areas or buffer zones, existing at the time Mr. Armstrong commences such competitive activities.

As rewritten, we conclude the Taco Mejico restaurants within the Spokane franchise area are in violation of the covenant and, therefore, Mr. Armstrong must pay the royalties due TTI under its agreement and either cease further operation of such restaurants or convert them to Taco Time restaurants.[4] As to the Kennewick Taco Time restau-

---

[2]Most TTI franchises in evidence in this case provide that TTI promises not to establish or cause to be franchised another Taco Time restaurant within a certain distance of another franchise. We characterize this area as a "buffer zone" or an "exclusively–protected area."

[3]We do not decide the enforceability of the covenant in a state or country that has declared noncompetitive provisions void.

[4]We note that Mr. Armstrong does not argue damages are adequate and, therefore, TTI should be denied injunctive relief. As pointed out by TTI, deci-

rant, the trial court correctly concluded in its opinion the covenant was violated and Mr. Armstrong must pay royalties for the period of its operation to TTI; further operation is enjoined unless with the consent of TTI.

As to the Wenatchee Taco Mejico, the circumstances are different. The record shows that Mr. Armstrong purchased an existing Taco Time franchise for the Wenatchee area. An unsigned copy of that franchise agreement is in evidence and contains a covenant not to compete. The record does not indicate any consideration was given to the effect of this covenant upon Mr. Armstrong's opening a Taco Mejico in Wenatchee after the termination of this franchise. Instead, the court applied the revised covenant in the Spokane franchise to the Taco Mejico in Wenatchee. Because of the lack of specificity in the record and the court's findings as to the Wenatchee franchise, we remand the question of Mr. Armstrong's right to continue his Wenatchee operation for further determination.

Second, Mr. Armstrong contends enforcement of the covenant is not necessary to protect either TTI's sale of franchises and collection of royalties from other franchisees, or the other franchisees' operation of their restaurants. We disagree.

■■ The court found:
TTI Taco Time franchise rights are very valuable.

. . . .

TTI has a protectable interest in the enforceability of the covenant not to compete, including the protection of its ability to sell new franchise rights, and the protection of existing franchisees from competition by a fellow–franchisee.

No error was assigned to these findings and they become

sions from other states addressing this question hold damages are inadequate as a matter of law and injunctive relief follows as a matter of course. *Miller v. Kendall,* 541 P.2d 126, 127 (Colo. Ct. App. 1975); *Hartwell's Office World, Inc. v. Systex Corp.,* 598 S.W.2d 636, 639 (Tex. Civ. App. 1980); *John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164, 1167 (1977); *Schultz v. Ingram,* 38 N.C. App. 422, 248 S.E.2d 345 (1978). *But see Shakey's Inc. v. Martin,* 91 Idaho 758, 430 P.2d 504, 509 (1967).

verities. *Xerox Corp. v. King County,* 94 Wn.2d 284, 617 P.2d 412 (1980); *Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 615 P.2d 1279 (1980). Further, neither party argues a franchise is not a protectable interest. Moreover, it has been held that even though a franchisor has no protectable interest in a method or style of doing business, it does have a legitimate interest in protecting the basic product it has to sell—its franchise. *Shakey's Inc. v. Martin,* 91 Idaho 758, 430 P.2d 504, 509 (1967); *see also Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207, 211 (1976); *McDonald's Sys., Inc. v. Sandy's Inc., supra* at 45 Ill. App. 2d 71, 195 N.E.2d 29. Therefore, the contention must fail.

Third, Mr. Armstrong contends enforcement of the noncompetition covenant by a franchisor who not only franchises, but also operates restaurants, constitutes an unlawful horizontal allocation of territory and violates the Sherman Antitrust Act. He contends the purpose of the noncompetition clause within the TTI franchise agreement was to effect a geographic division of the market in violation of the act. The trial court concluded:

> Mr. Armstrong did not raise by his pleadings the issue of alleged violations of the Sherman Anti–Trust Act in connection with the covenant not to compete and that issue is not before this Court. Furthermore, there was no evidence that the franchise agreement or the covenant not to compete or its enforcement would violate the Sherman Anti–Trust Act.

We agree, but for a different reason.

The Sherman Antitrust Act, 15 U.S.C. § 4 confers jurisdiction upon the federal courts:

> The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of sections 1 to 7 of this title; . . .

This jurisdiction is exclusive. *Miller v. Granados,* 529 F.2d 393, 395 (5th Cir. 1976); *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 658 (9th Cir. 1972); *Union Oil Co. v. Chandler,* 4 Cal. App. 3d 716, 84

Cal. Rptr. 756, 764 (1970); *see also General Inv. Co. v. Lake Shore & M.S. Ry.*, 260 U.S. 261, 67 L. Ed. 244, 43 S. Ct. 106 (1922). Matters involving federal antitrust laws, whether raised by way of attack or defense, are beyond the jurisdiction of state courts. *Vaughn & Co. v. Saul,* 143 Ga. App. 74, 237 S.E.2d 622 (1977); *Union Oil Co. v. Chandler, supra; AMF Pinspotters, Inc. v. Harkins Bowling, Inc.,* 260 Minn. 499, 110 N.W.2d 348, 354 (1961). Consequently, we have no jurisdiction to hear and determine any alleged Sherman Antitrust Act violations.

Fourth, Armstrong contends the enforcement of the covenant is prohibited by the Washington Franchise Investment Protection Act, RCW 19.100. We disagree. The covenant not to compete as modified not only complies with the relief requested by Mr. Armstrong in his complaint, it also does not discriminate between franchisees. The court utilized the latest provisions and restrictions contained in current Taco Time franchises in fashioning the modification. Furthermore, the statute allows discrimination if the franchisor shows such discrimination is:

(1) "reasonable," (2) "based on franchises granted at materially different times" and is "reasonably related to such difference in times" or based "on other proper and justifiable distinctions considering the purposes" of the Franchise Act, and (3) "not arbitrary."

Chisum, *State Regulation of Franchising: The Washington Experience,* 48 Wash. L. Rev. 291, 373 (1973); *see* RCW 19.100.180(2)(c). Here, the covenant as modified by the trial court is reasonable. The record shows the covenants within the different TTI franchises varied in relation to the time they were granted and, therefore, were not arbitrary. Consequently, we hold RCW 19.100.180(2)(c) was not violated.

■ Finally, Mr. Armstrong contends the court erred in enjoining him from conveying the business locations operated under the name "Taco Mejico" unless the purchaser for itself, and its successors, covenants not to use the location for the operation of a Mexican fast–food restaurant. We agree. Courts cannot write into a contract provisions

which the parties did not incorporate therein when the subject matter was being considered and agreed upon prior to executing the contract, *Nashem v. Jacobson*, 6 Wn. App. 363, 368, 492 P.2d 1043 (1972); *Dwelley v. Chesterfield*, 14 Wn. App. 480, 483, 542 P.2d 1261 (1975), *aff'd*, 88 Wn.2d 331, 560 P.2d 353 (1977); nor can the courts impose on a party an obligation which was not assumed when the contract was made. *Puget Sound Power & Light Co. v. Shulman*, 84 Wn.2d 433, 439, 526 P.2d 1210 (1974); *Seattle-First Nat'l Bank v. Earl*, 17 Wn. App. 830, 835, 565 P.2d 1215 (1977); *Nowoj v. Mulalley*, 1 Wn. App. 939, 943, 465 P.2d 194 (1970). Here, the original franchise agreement between TTI and Mr. Armstrong contains no provision or restriction regarding the sale of the business location of any of the restaurants. The trial court erred by, in effect, writing such a restriction into the franchise agreement.[5]

Affirmed in part and reversed in part.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied December 15, 1981.

---

[5]Since we reverse on this issue, we need not reach Mr. Armstrong's contention the restriction is an unreasonable restraint on alienation.